# MYRA A. HOOVER v. W. S. CARVER.[1]

December 15, 1916.

Nos. 19,908—(48).

**Evidence — conveyance in fraud of creditors — admissible in action of replevin against sheriff.**

1. Plaintiff having brought suit to recover from defendant certain personal property seized by him as sheriff under an execution against plaintiff's husband, evidence in respect to the transactions by which her husband's farm had been transferred to plaintiff was properly admitted as bearing upon the question as to whether there was a scheme to defraud and as to whether the produce of the farm belonged to plaintiff or her husband.

**Married woman may conduct business independently of her husband.**

2. Under our statute a married woman may carry on business on her own account, independently of her husband the same as if unmarried, and the avails of her contracts and industry are not liable for his debts.

**Her individual property not liable for her husband's debts.**

3. Property purchased by a married woman upon her individual credit, without applying upon the purchase price any property, or the proceeds of any property, derived from or through her husband, cannot be taken for his debts.

**Same — evidence — seizure wrongful.**

4. The major portion of the property seized by defendant was so purchased by plaintiff, and the seizure was wrongful.

**Conveyance of farm in fraud of husband's creditors — right to produce from farm.**

5. If the transfer of the farm to plaintiff was made with intent to defraud

[1] Reported in 160 N. W, 249.

---

Note.—For authorities passing on the question of ownership of separate estate, trade or business as a condition of married woman's right to contract, see note in 4 L.R.A.(N.S.) 547.

For a discussion of the question of burden of proof as to fraud against creditors in transfer of property from husband to wife, see note in 56 L.R.A. 823.

creditors of her husband, whether she can hold the produce of the farm as against such creditors depends upon whether she, acting in good faith, raised such produce for her own use and benefit; and this is ordinarily a question for the jury.

Action in replevin in the district court for Martin county and in case delivery of the property could not be had for $1,390, the value thereof, and $100 damages for its detention. The answer alleged that defendant as sheriff of the county took the property described by virtue of an execution in which John H. Smith and others were plaintiffs and W. L. Hoover and others were defendants as the property of said Hoover, and that the property described was his property, as defendant verily believed. The case was tried before Nelson, J., acting for the judge of the Seventeenth judicial district, who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict in favor of defendant. From an order denying her motion for a new trial, plaintiff appealed. Reversed.

*E. C. Dean,* for appellant.

*Paul C. Cooper* and *Haycraft & Palmer,* for respondent.

TAYLOR, C.

Under and pursuant to an execution issued upon a judgment against W. L. Hoover and others, defendant as sheriff of Martin county levied upon the property in controversy as the property of W. L. Hoover. Plaintiff, the wife of W. L. Hoover, after making a written demand upon defendant for the property, brought this action in replevin to recover it on the ground that it belonged to her and not to her husband. Defendant had a verdict and plaintiff appealed from an order denying a new trial.

Against the objection of plaintiff, defendant was permitted to prove, at the trial, that W. L. Hoover had been the owner of a farm of 302 acres for many years, and that, after the accrual of the indebtedness for which the judgment was subsequently rendered, Hoover and plaintiff, his wife, conveyed the farm to two brothers of plaintiff who subsequently conveyed it to plaintiff. Defendant also presented evidence, from which it might be inferred that these transactions were for the purpose of placing the farm beyond the reach of creditors. In explanation plaintiff pre-

sented evidence tending to show that, owing to the ill health of her husband, the management of affairs fell upon her; that the farm was mortgaged in the sum of $9,000; that the deed to her brothers was made to procure money from them to pay past due interest and taxes, and that the farm was conveyed to her when these advances had been repaid. Plaintiff contends that the testimony concerning the farm and the various transactions in relation to it should have been excluded. We think it had a bearing upon the question as to whether there was a scheme to defraud and as to whether the profits of the farm belonged to plaintiff or her husband and was properly admitted. Ladd v. Newell, 34 Minn. 107, 24 N. W. 366.

Defendant contends that the evidence justified the jury in finding that W. L. Hoover was doing business in his wife's name for the purpose of keeping his property beyond the reach of creditors, and that not only the real estate but also the personal property which stood in the wife's name in fact belonged to him. It may be conceded that if the real estate were involved in this action, and the jury had found that the conveyance to plaintiff was for the purpose of defrauding creditors, the finding would be sustained by the evidence. It may also be conceded that subsequently acquired personal property which is in fact a part of the proceeds of property conveyed to defraud creditors, and the title to which is taken in the name of the wife as a part of the same fraudulent scheme, may be reached by such creditors, and that the jury has found that the property in controversy was so acquired. But the important question here is whether this last finding is sustained by the evidence.

Under our statute a married woman may carry on business on her own account, independently of her husband, the same as if unmarried, and the avails of her contracts and industry are not liable for his debts. G. S. 1913, § 7143. The property seized by defendant consists of 4 horses; 2 two-year-old colts; 6 cows; 5 yearlings; 60 pigs; 100 chickens; 200 bushels of corn on the ear; and one-third interest in a corn husker. One of the cows was purchased by plaintiff some ten years before the trial with money earned by her by keeping boarders in the village of Truman. This purchase was made long before any of the alleged fraudulent transactions took place, and could not have been tainted thereby, for the indebtedness in controversy did not exist at that time and W. L. Hoover continued to

own the farm for some years after the purchase, and for aught that appears had ample means to meet all his obligations. Plaintiff purchased the other 5 cows, the 4 horses, some hogs and the interest in the corn husker from third parties on credit, and gave her individual notes for the purchase price. These notes still remain unpaid, except where she borrowed money from the bank upon her individual note and paid some of the original notes, and in such cases the note to the bank still remains unpaid. The statute gives her the right to do business on her own account, and to enjoy the avails of her contracts and industry free from liability for the debts of her husband; and where, as in this case, she purchases property without her husband becoming in any way liable for the purchase price therefor, and without applying any property or the proceeds of any property, derived from or through him, upon such purchase price, there is no ground for holding that it may be taken for his debts. Defendant does not dispute that the facts are as above stated, but contends that the property fraudulently transferred to the wife gave her the credit which enabled her to make these purchases. If this be true, perhaps those who gave her credit in reliance upon her apparent financial ability may have cause to complain, but it does not create a right in the creditors of her husband to take property which did not come from her husband and is not the proceeds of property which did come from him. Four of the yearlings and the 60 pigs are the increase from the cows and hogs so purchased by plaintiff and consequently belong to her. The corn was raised by plaintiff upon the farm after it came into her possession, and whether she is entitled to hold it as against her husband's creditors depends upon whether she, acting in good faith, raised it for her own use and benefit. Cain v. Mead, 66 Minn. 195, 68 N. W. 840; Olson v. Amundson, 51 Minn. 114, 52 N. W. 1096; Hartman v. Weiland, 36 Minn. 223, 30 N. W. 815; Hossfeldt v. Dill, 28 Minn. 469, 10 N. W. 781. This question is doubtless for the jury. The chickens were raised upon the farm, and the two two-year-old colts were purchased by plaintiff, when small colts, with the proceeds of chickens and eggs raised on the farm. As in the case of the corn, whether they may be taken for the husband's debts depends upon whether the chickens were raised by plaintiff for her own use and benefit, and this question is doubtless also for the jury. The other yearling was purchased when a calf by the boy

with money given him by plaintiff. The source from which this money came is not disclosed.

Order reversed and a new trial granted.