Ronald L. ABRAHAMSON, Appellant,

v.

Beatrice ABRAHAMSON, in her individual capacity and as Trustee of the Abrahamson Trust dated March 27, 1997, et al., Respondents,

Arvo J. Kauppi, Respondent,

John A. Swift, et al., Gregory J. Duren, et al., Respondents.

No. C7–99–2163.

Court of Appeals of Minnesota.

June 27, 2000.

Roger D. Anderson, St. Paul, MN (for appellant).

Esther E. McGinnis, Warren E. Peterson, Peterson, Fram & Bergman, P.A., St. Paul, MN (for respondents Beatrice Abrahamson, et al.).

John V. Lager, Neff & Lager, Virginia, MN (for respondent Arvo Kauppi).

John and Rita Swift, Tower, MN ( pro se respondents).

Clinton R. McLagan, McLagan & Lerman, P.A., Mendota Heights, MN (for respondents Gregory Duren, et al.).

Considered and decided by LANSING, Presiding Judge, WILLIS, Judge, and PORITSKY, Judge.*

## OPINION

LANSING, Judge

Ronald Abrahamson sued for specific performance or damages, alleging breach of a contract for the sale of land held in joint tenancy by Gordon Abrahamson, Sr., and his wife, Beatrice Abrahamson. He appeals from summary judgment in favor of Beatrice Abrahamson and her successors-in-interest. Because as a matter of law Ronald Abrahamson did not effectively exercise his purchase option by discharging Gordon Abrahamson's personal debt without Beatrice Abrahamson's knowledge or consent, we affirm the summary judgment.

## FACTS

On January 31, 1992, Gordon and Beatrice Abrahamson executed an option contract with Ronald Abrahamson, Gordon Abrahamson's brother, for the sale of land Gordon and Beatrice Abrahamson held in joint tenancy. The contract gave Ronald Abrahamson the option to purchase the land within 30 months after the contract date for $13,500, along with 9% annual interest, real estate taxes, and insurance costs. It required Ronald Abrahamson to give Gordon and Beatrice Abrahamson written notice of his intent to buy and to "perform the conditions and comply with the terms [of the option]" within the option period. It also provided that if Ronald Abrahamson gave timely written notice but did not otherwise complete the transaction, he would have an additional 60 days to examine title, make conveyances, and close. Failure to comply with the terms of the option within the option period would automatically terminate the option.

In July 1994, before the option expired, Ronald Abrahamson gave Gordon and Beatrice Abrahamson notice of his intent to purchase the property. By way of payment, however, Ronald Abrahamson—with Gordon Abrahamson's consent but without Beatrice Abrahamson's knowledge or consent—credited Gordon Abrahamson $16,537.50 against a debt Gordon Abrahamson had incurred personally to Ronald Abrahamson in connection with a failed stock transaction. The parties do not dispute that Beatrice Abrahamson did not know of the debt or that Ronald Abrahamson assisted his brother in his efforts to conceal the debt from his wife by allowing him to register the failed stock in Ronald

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Abrahamson's name. Because Gordon and Ronald Abrahamson were concerned about tax liens of record outstanding against Ronald Abrahamson, they never executed, delivered, or recorded conveyance of the property.

After Gordon Abrahamson's death in April 1996, Beatrice Abrahamson recorded an affidavit of survivorship and quit-claimed the property into a trust. The trust named Gordon Abrahamson, Jr., and Beatrice Abrahamson as trustees and Beatrice Abrahamson as principal beneficiary.

In July 1996, Ronald Abrahamson once again gave Beatrice Abrahamson written notice that he intended to exercise his option to buy the land under the January 1992 contract and to obtain financing through Queen City Federal Savings and Loan. He made no reference to his current claim that he had already satisfied the terms of the option in 1994. When Gordon Abahamson, Jr., contacted Queen City Federal Savings and Loan, however, he was told that Ronald Abrahamson had terminated the loan process. As a result, in January 1998, the trust sold the property by contract for deed to Gary and Anne Duren for $45,000. At the same time, Arvo Kauppi, John and Rita Swift, and Swift Kicks, Inc., granted to and obtained from the trust mutual easements on the property.

In November 1998, Ronald Abrahamson brought this action for specific performance or damages, alleging breach of contract. In July 1999, Beatrice Abrahamson, Gordon Abrahamson Jr., and Gregory and Anne Duren moved for summary judgment dismissing Ronald Abrahamson's claims to the property. The district court granted the motion, reasoning that under Minn. Stat. § 519.02, Beatrice Abrahamson could not be divested of her joint interest in the property in consideration for partial satisfaction of her husband's personal debt. In December 1999, the district court entered final judgment pursuant to Minn. R. Civ. P. 54.02 and Minn. R. Civ.App. P. 104.01, finding there was no just reason for delay. This appeal followed.

## ISSUES

I. Does Minn.Stat. § 519.02 (1998) protect a married woman's rights in property she acquires jointly with her husband during the marriage?

II. May an option holder exercise an option to purchase land held in joint tenancy by two joint offerors by knowingly providing consideration that was not contemplated by the option and benefits only one offeror?

## ANALYSIS

■■■■ On appeal from summary judgment, the reviewing court must determine whether genuine issues of material fact exist and whether the district court erred in its application of the law. *Wallin v. Letourneau,* 534 N.W.2d 712, 715 (Minn. 1995). In so doing, the court must view the evidence in the light most favorable to the nonmoving party and resolve any doubts as to the existence of a fact issue against the moving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The interpretation of statutes raises an issue of law subject to de novo review. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990). Whether a contract exists, on the other hand, presents an issue for the fact-finder unless the evidence is conclusive. *Morrisette v. Harrison Int'l Corp.,* 486 N.W.2d 424, 427 (Minn.1992); *Estate of Peterson,* 579 N.W.2d 488, 490 (Minn.App.1998).

### I

■■■■ Statutory construction is unwarranted when a statute is not reasonably susceptible of more than one interpretation. *See* Minn.Stat. § 645.16 (1998) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). When, on the other hand, the words of a statute

are not explicit and more than one reasonable interpretation is possible, the statute must be construed. *Id.* The object of all statutory construction is to ascertain and effectuate the legislature's intention. *Id.* The legislature's intention may be ascertained by considering, among other things, the need for the law, the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained. *Id.*

■ Minn.Stat. § 519.02 (1998) protects a woman's right to own property in her own right, free from liability for her husband's debts:

> All property, real, personal, and mixed * * * owned by any woman at the time of her marriage, shall continue to be her separate property * * *; and any married woman, during coverture, may receive, acquire, and enjoy property * * * and all avails of her labor and industry, free from the control of her husband, and from any liability on account of his debts, as fully as if she were unmarried.

The legislature originally enacted the statute as the Minnesota Married Woman's Act to abolish the common-law concept of legal unity of husband and wife. *Gillespie v. Gillespie,* 64 Minn. 381, 383, 67 N.W. 206, 207 (1896). The legal-unity concept deprived a married woman of a separate legal existence and the right to a legal estate in her own property. *Id.* In enacting the statute, the legislature sought to eliminate the disabilities concomitant to being a married woman by, among other things, placing married women on an equal footing with their husbands "in respect to the management and control of [their] *separate* property." *Drake v. Drake,* 145 Minn. 388, 390, 177 N.W. 624, 624 (1920) (emphasis added).

■ By its terms, the statute clearly applies to property a wife acquires separately from her husband before the marriage. Minn.Stat. § 519.02. The statute also applies to property a married woman acquires on her individual credit after the marriage. *Hoover v. Carver,* 135 Minn.

105, 108, 160 N.W. 249, 250–51 (1916). The question in this case is whether Minn. Stat. § 519.02 applies to property that a husband and wife acquire jointly during the marriage. We conclude that it does not.

We recognize that the language of Minn. Stat. § 519.02 is broad and could arguably be construed to apply to marital property. *See Manderfeld v. Krovitz,* 539 N.W.2d 802, 807 (Minn.App.1995) (stating in dictum that Minn.Stat. § 519.02 precludes specific performance of option contract for sale of land husband and wife held in joint tenancy), *review denied* (Minn. Jan. 25, 1996). But the original statutory purpose, which we must consider in interpreting the statute, suggests otherwise. The legislature originally enacted the statute to abolish the legal-unity concept. The legal-unity concept affected a married woman's right to own property *separately* from her husband, not jointly with him. The need for the law and the mischief to be remedied therefore suggest that the legislature did not intend Minn.Stat. § 519.02 to affect marital-property rights. This interpretation is consistent with *Drake,* in which the supreme court stated that the statute was intended to put a married woman on an equal footing with her husband "in respect to the management and control of her *separate* property." *Drake,* 145 Minn. at 390, 177 N.W. at 624 (emphasis added).

The court's reasoning in *Hoover* supports our reading of the statute as well. In *Hoover,* the court held that property a married woman had purchased on her individual credit was not subject to attachment by her husband's creditors by virtue of Minn.Stat. § 519.02. *Hoover,* 135 Minn. at 108, 160 N.W. at 250–51. In arriving at its holding, the court stressed that the woman had purchased the property "without applying any property or the proceeds of any property, derived from or through [her husband], upon [the] purchase price." *Id.* at 108, 160 N.W. at 250. The court thus implied that the married woman's act

would not have applied had the woman purchased the property jointly with her husband. The same inference arises from the court's additional determination that whether corn the woman raised was subject to attachment by her husband's creditors constituted a jury question dependent on whether "she, acting in good faith, raised [the corn] for her own use and benefit." *Id.* at 108, 160 N.W. at 251 (citations omitted).

As a result of this analysis, we conclude that a common-sense reading of the statute in light of its purpose suggests the statute applies only to property a woman acquires separately from her husband.[1] Accordingly, the district court erred in concluding that Minn.Stat. § 509.12 precludes enforcement of the contract at issue in this case. The determinative issue is not whether the statute permits the use of Beatrice Abrahamson's joint interest in the property to satisfy her husband's personal debt, but whether Ronald Abrahamson effectively exercised his purchase option by discharging Gordon Abrahamson's personal debt without Beatrice Abrahamson's knowledge or consent.

## II

■■■■ An option is a unilateral undertaking to keep an offer open for a period of time. *Morrison v. Johnson,* 148 Minn. 343, 345, 181 N.W. 945, 946 (1921). An option remains a unilateral undertaking and conveys no interest in its subject matter until the optionee effectively exercises it. *M.L. Gordon Sash & Door Co. v. Mormann,* 271 N.W.2d 436, 439 (Minn.1978); *Brachmann v. Netzinger,* 293 Minn. 405, 407, 196 N.W.2d 616, 618 (1972). If the time in which an option is to be exercised expires before the optionee meets its terms and conditions, the option lapses.

*Ferch v. Hiller,* 209 Minn. 124, 128, 295 N.W. 504, 506 (1941).

■■■■ An option must be construed strictly in favor of the maker and must be accepted according to its terms. *Brachmann,* 293 Minn. at 407, 196 N.W.2d at 618; John D. Calamari & Joseph M. Perillo, *Contracts* § 2–27, at 91 (2d ed.1977). To give rise to a binding contract, the acceptance must "comply *exactly* with the requirements of the offer." *Rose v. Guerdon Indus., Inc.,* 374 N.W.2d 282, 284 (Minn.App.1985) (quoting *Minar v. Skoog,* 235 Minn. 262, 265–66, 50 N.W.2d 300, 302 (1951)). If the acceptance varies, it constitutes a counteroffer, which the original optionee may accept or reject. *Markmann v. H.A. Bruntjen Co.,* 249 Minn. 281, 286, 81 N.W.2d 858, 862 (1957). A counteroffer does not give rise to a completed contract until accepted. *Id.*

■■■■ Ronald Abrahamson claims that he accepted the option according to its terms as a matter of law because (a) an antecedent debt may be used as consideration in a contract for the purchase of land, and (b) payment to one joint obligee is sufficient to discharge a contractual obligation, whether or not the other obligee benefits from the payment. But Ronald Abrahamson relies on cases in which the consideration given to one joint obligee benefited *both* obligees and was bargained for by both obligees. *See Delaney v. Fritz,* 221 Minn. 190, 191, 21 N.W.2d 479, 479–80 (1946) (holding undivided mortgage debt discharged upon payment to one of several payees); *Moore v. Bevier,* 60 Minn. 240, 242, 62 N.W. 281, 282–83 (1895) (holding payment to one of two joint obligees discharged the payor's contractual obligation). In this case, unlike *Delaney* and *Moore,* Ronald and Gordon Abrahamson intentionally withheld knowledge of the

---

1. We note parenthetically that our interpretation is consistent with foreign statutes that are drafted more specifically than Minn.Stat. § 519.02. *See, e.g.,* Mo.Rev.Stat. § 451.250 (1998) ("All real estate and any personal property * * * belonging to any woman at her marriage, or which may have come to her during coverture, by gift, bequest, or inheritance, or by purchase with her separate money or means, shall * * * be and remain her separate property under her sole control.").

purported payment from Beatrice Abrahamson and intentionally circumvented her rights with a procedure that benefited only Gordon Abrahamson and was not specifically bargained for by Gordon Abrahamson *and* Beatrice Abrahamson. Ronald Abrahamson has not provided, and we have not found, authority for the proposition that credit given to one joint offeror for an antecedent personal debt, without the other offeror's knowledge or consent, adequately satisfies the terms of an option for the purchase of land held in joint tenancy.

Although Minnesota appellate courts have not addressed the issue, other courts have held that an obligor's performance as to one obligee does not discharge the obligation when it is intended as a fraud on the rights of other obligees and the obligor knows it. *See Hurley v. Southern Cal. Edison Co.*, 183 F.2d 125, 131 (9th Cir. 1950) (stating obligation not discharged when obligor had reason to know only obligee who received performance would benefit from performance and would not account to other joint obligees); *Beatson v. Harris*, 60 N.H. 83, 84 (1880) (holding release obtained through the "fraudulent connivance" of joint obligee and obligor is void); *cf. Cober v. Connolly*, 20 Cal.2d 741, 128 P.2d 519, 521 (1942) (upholding release obtained fraudulently by joint obligee when obligor performed in good faith and did not know of joint obligee's breach of duty toward other obligee); *see also* 12 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 36:17 (4th ed.1999); 4 Arthur Linton Corbin, *Corbin on Contracts*, § 941 (1951 & Supp. 2000). Obligors know or have reason to know that their performance is fraudulent if they know that the obligee receiving the performance intends to keep the benefit of the performance and not to account to his or her co-obligee. *Hurley*, 183 F.2d at 129. These principles are consistent with Restatement (Second) of Contracts § 300 (1979) ("If an obligee attempts or threatens to discharge the promisor in violation of his duty to a co-obligee of the same performance, the co-obligee may obtain an injunction forbidding the discharge.").

In this case, the parties do not dispute, for purposes of summary judgment, that Ronald Abrahamson attempted to exercise his purchase option by discharging Gordon Abrahamson's personal debt, knowing that Beatrice Abrahamson did not know about the debt and that Gordon Abrahamson did not intend to share the benefit of Ronald Abrahamson's performance with his wife. Thus, as a matter of law, Ronald Abrahamson did not effectively perform the conditions of the purchase option. Although Gordon Abrahamson accepted the discharge of his debt as performance, the acceptance was inoperative because it was knowingly fraudulent as to Beatrice Abrahamson or in breach of Gordon Abrahamson's fiduciary duty to her. *See Gibbons v. Bente*, 51 Minn. 499, 509, 53 N.W. 756, 758 (1892) (noting that authority of joint obligor to bind co-obligor is based on agency principles); *Cober*, 128 P.2d at 521 (stating "[a] discharge of the promisor by an obligee in fraud of a co-obligee is inoperative to discharge the promisor's duty to the extent of the co-obligee's interest in the performance, if the promisor * * * has reason to know of the fraud") (quotation omitted).

## DECISION

Because Ronald Abrahamson did not effectively exercise his purchase option as a matter of law by discharging Gordon Abrahamson's personal debt without Beatrice Abrahamson's knowledge or consent, summary judgment is appropriate in this case.

**Affirmed.**