WELLS FARGO HOME MORTGAGE, INC., Appellant,

v.

Michelle R. NEWTON, a/k/a Michelle R. Newton Witkowski, Respondent,

John Doe et al., Defendants,

Theodore Witkowski, Respondent.

No. C1–02–16.

Court of Appeals of Minnesota.

July 9, 2002.

Gary B. Bodelson, Minneapolis, for appellant.

Michelle R. Newton, Minneapolis, pro se respondent.

Christopher E. Brevik, Brevik & Associates, Maple Grove, for respondent Theodore Witkowski.

Considered and decided by SCHUMACHER, Judge, PETERSON, Judge, and PORITSKY, Judge.*

## OPINION

PETERSON, Judge.

Appellant Wells Fargo Home Mortgage, Inc., challenges the district court's grant of summary judgment in favor of respondent Theodore Witkowski. Wells Fargo contends that (1) the district court erroneously determined that a mortgage executed by respondent Michelle R. Newton is not a purchase-money mortgage; (2) under Minn.Stat. § 519.02 (1998), the spousal-signature requirement in Minn.Stat. § 507.02 (1998) does not apply to the mortgage because Newton owned the mortgaged property when she married Witkowski; and (3) the district court erroneously dismissed its claims against Newton regarding money owed under her promissory note. We affirm in part, as modified, and reverse and remand in part.

## FACTS

On July 27, 1988, Newton, then a single person, entered into a contract for deed with Elmer and Ruth Haase to purchase a house in Coon Rapids. On May 18, 1990, Newton and Witkowski were married. Following the marriage, the couple lived in the house in Coon Rapids. In February 1999, the couple separated, and Witkowski moved out of the house. Soon after, Witkowski petitioned to dissolve the marriage.

In October 1999, while the dissolution proceeding was pending, Newton borrowed $116,600 from First State Mortgage Corporation and executed a promissory note and a mortgage for the Coon Rapids property to secure the note. The mortgage did not name Witkowski as a mortgagor, and Witkowski did not sign the mortgage. The mortgage was assigned to Norwest Mortgage Inc., which is now known as Wells Fargo Home Mortgage, Inc. Newton used $55,034.74 of the amount borrowed to pay off the contract for deed, and the remaining amount borrowed ($61,565.26) to pay closing costs and personal expenses.

Newton failed to make mortgage payments after April 2000, and in November 2000, Wells Fargo filed suit against Newton, Witkowski, and others, seeking: (1) a declaration that the mortgage is a purchase-money mortgage superior to the claim or right of any defendant; (2) a judgment against Newton for the whole sum secured by the mortgage, plus interest and costs and disbursements, including attorney fees; (3) a decree of foreclosure directing the sale of the property; (4) a declaration that the defendants' interests in the property are inferior to Wells Fargo's lien, and the defendants are barred from any right, title, or interest in the property, except the right of redemption; and (5) a deficiency judgment against Newton, if the sale proceeds are insufficient to satisfy the judgment.

Wells Fargo and Witkowski each moved for summary judgment. Newton appeared at the hearing on the motion, but she was not allowed to participate because she had not filed an answer to Wells Fargo's complaint or paid a filing fee. The district court granted Witkowski's motion for summary judgment, denied Wells Fargo's mo-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tion for summary judgment, and dismissed Wells Fargo's claims against Witkowski.

Wells Fargo appealed. This court dismissed the appeal because the district court had dismissed Wells Fargo's claims against Witkowski but had not dismissed Wells Fargo's claims against Newton, and, therefore, the judgment was a nonappealable, partial judgment. The district court issued a new order that, in addition to the relief granted in the earlier judgment, dismissed Wells Fargo's claims against Newton. Judgment was entered, and Wells Fargo appealed again.

## ISSUES

1. Is the mortgage Newton executed exempt from the spousal-signature requirement in Minn.Stat. § 507.02 (1998) because it is a purchase-money mortgage?

2. Under Minn.Stat. § 519.02 (1998), is the mortgage Newton executed valid without Witkowski's signature because Newton owned the mortgaged property when she married Witkowski?

3. Did the district court err in dismissing Wells Fargo's claims against Newton arising under the promissory note?

## ANALYSIS

A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law.

*Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law.

*State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). We "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio,* 504 N.W.2d at 761.

When the district court grants a summary judgment based on its application of statutory language to the undisputed facts, * * * its conclusion is one of law and our review is *de novo.*

*Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

### 1. Purchase–Money Mortgage

 When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation.

*American Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citations and quotations omitted).

Minn.Stat. § 507.02 (1998) states, in part:

If the owner is married, no conveyance of the homestead, except a mortgage for purchase money unpaid thereon, * * * shall be valid without the signatures of both spouses. A spouse's signature may be made by the spouse's duly appointed attorney-in-fact.

A husband and wife, by their joint deed, may convey the real estate of either. A spouse, by separate deed, may convey any real estate owned by that spouse, except the homestead, subject to the rights of the other spouse therein; and either spouse may, by separate conveyance, relinquish all rights in the real estate so conveyed by the other spouse.

 Wells Fargo argues that Minn.Stat. § 507.02 does not apply to the mortgage Newton signed because the loan proceeds obtained with the mortgage were partly

applied to the purchase price of the house, and, therefore, the mortgage is a purchase-money mortgage. The district court determined that because the transaction in which the mortgage was created was a refinancing of a prior obligation, and more than half of the money borrowed in the transaction was used to pay personal expenses rather than the purchase price of the house, the mortgage is not a purchase-money mortgage, and Minn.Stat. § 507.02 applies to the mortgage. Because the language of Minn.Stat. § 507.02 is subject to either interpretation, the statute is ambiguous, and we must determine whether Minn.Stat. § 507.02 applies to a mortgage when funds obtained with the mortgage are used partly to refinance a contract for deed and partly to pay personal expenses.

■ It has long been the law in Minnesota that a purchase-money mortgage is superior to any other party's interest in the property. *See Stewart v. Smith,* 36 Minn. 82, 83, 30 N.W. 430, 431 (1886) (purchase-money mortgage takes precedence over any other claim or lien arising through the mortgagor). Consistent with this principle, Minn.Stat. § 507.02 does not apply when a mortgage on a homestead is "a mortgage for purchase money unpaid." But the statute does not define "a mortgage for purchase money unpaid."

■ A purchase-money mortgage is one given to secure unpaid purchase money. *O'Halloran v. Marriage,* 167 Minn. 443, 445, 209 N.W. 271, 272 (1926). In other words, financing the purchase of a parcel of land by granting a mortgage on the land as security creates a purchase-money mortgage. *Marin v. Knox,* 117 Minn. 428, 430–32, 136 N.W. 15, 16–17 (1912).

> When a third party furnishes a part of the purchase price and takes a mortgage therefor from the vendee, the mortgage may be given effect as a purchase-money mortgage. It is unnecessary that the deed and the mortgage should be executed at the same moment, or even on the same day, provided the execution of the two instruments constitutes part of one continuous transaction and was so intended.

*Olson v. Olson,* 203 Minn. 199, 202, 280 N.W. 640, 641 (1938) (citations and quotations omitted).

The mortgage Newton signed meets this definition of a purchase-money mortgage. A third party (Wells Fargo's predecessor) furnished a part of the purchase price for Newton's house (the amount Newton used to pay off the contract for deed). When Newton paid off the contract for deed, she received a deed for the property, and the third party took a mortgage from her to secure its loan. The deed and the mortgage were intended to be part of one transaction to refinance Newton's house.

■ Under *Marin v. Knox,* a mortgage used to refinance a contract for deed can be a purchase-money mortgage. In *Marin,* E.R. Keplinger, the vendor of real property, gave the vendee, Austin C. Knox, "a contract agreeing to convey for $3,200." *Marin,* 117 Minn. at 429–30, 136 N.W. at 16. The vendee took possession, but five years later, was unable to make payments as agreed. *Id.* at 430, 136 N.W. at 16. To pay the remaining $2,116.40 due under the contract for deed, the vendee borrowed $1,500 and gave two separate mortgages to secure the loan. *Id.* The entire amount borrowed was paid to the vendor as part of the purchase price. *Id.* at 431, 136 N.W. at 16. The vendee also gave the vendor a mortgage for $616.40 to secure the remaining balance due. *Id.* at 430, 136 N.W. at 16. When the vendee's judgment creditor obtained title to the property upon an execution sale under a judgment against the vendee, the issue

arose whether the mortgages were purchase-money mortgages that had priority over the judgment. *Id.* at 430–31, 136 N.W. at 16. The supreme court stated:

> [The judgment creditor] earnestly contends that, because the contract for purchase of the land was made in 1902, there could be no agreement to take back a purchase-money mortgage in 1908; the written contract containing no provision for a mortgage. We fail to see the force of this position. In *Laidley v. Aikin*, 80 Iowa, 112, 45 N.W. 384, 20 Am. St. Rep. 408, the contract to convey had been given 3 years before the purchase-money mortgage was made. Knox had failed to make the payments stipulated in the contract, and Keplinger, by giving the 30–day notice required, was in a position to terminate all rights under the contract. In this situation, had Keplinger given a deed upon receiving back a mortgage from Knox for the amount due and unpaid, could it for a moment be claimed that the mortgage was not entitled to be considered as a purchase-money mortgage? When [the judgment creditor] obtained his judgment, it did not become a lien on the unpaid amount of the purchase price, and he should not be heard to object to whatever agreement the parties mutually agreed upon to secure the same, as long as the equity of Knox in the land was not diminished.
>
> We conclude, from the examination of the testimony and admitted facts, that the court was fully warranted in finding that at the time the mortgages were delivered $2,116.40 was due Keplinger upon the purchase price of the land; that the execution and delivery of the deed by Keplinger to Knox, and the mortgages from the latter to [the parties who made the $1,500 loan] and Keplinger, together with the payment to Keplinger of the proceeds of the $1,500 loan upon the unpaid purchase price of the land, constituted but one transaction; that the intent and agreement of all said parties was that the title to the land should vest in Knox, subject to the purchase-money mortgage liens of said three mortgages; and hence that said three mortgages in fact do represent and secure the payment of the purchase price of the land, and no other amount whatsoever.

*Id.* at 432–33, 136 N.W. at 17.

As in the mortgage transaction in *Marin v. Knox*, several years after entering into a contract for deed, Newton obtained a loan to refinance the contract for deed and gave the lender a mortgage to secure repayment of the loan. The fact that Knox gave the mortgages to refinance a prior obligation did not prevent the mortgages from being purchase-money mortgages; under *Marin v. Knox*, if Newton had used the loan proceeds only to refinance her contract for deed, the mortgage would be a purchase-money mortgage. But unlike the transaction in *Marin v. Knox*, Newton did not use every dollar obtained by means of her mortgage to pay the balance due on her contract for deed. Instead, she used more than half of the amount she obtained to pay closing costs and personal expenses. Consequently, unlike the mortgages in *Marin v. Knox*, the mortgage Newton signed does not "represent and secure the payment of the purchase price of the land, and no other amount whatsoever."

Because Newton used loan proceeds to pay expenses other than the balance due on her contract for deed, it is not completely accurate to say that the mortgage she signed is a mortgage for purchase money unpaid on her homestead. But because Newton used almost half of the loan proceeds to pay the balance due on her contract for deed, it is also not completely

accurate to say that the mortgage is not a mortgage for purchase money unpaid. However, Newton signed only one mortgage, and Minn.Stat. § 507.02 does not indicate whether the exception for "a mortgage for purchase money unpaid" ceases to apply if funds obtained by means of the mortgage are used to pay both purchase money and other expenses. Faced with this dilemma, the district court concluded that the mortgage is not a purchase-money mortgage, and, therefore, under Minn.Stat. § 507.02, the mortgage is invalid because it was not signed by both Newton and Witkowski.

Because the district court concluded that the mortgage is invalid, it dismissed all of Wells Fargo's claims. If affirmed, this would mean that Wells Fargo could not enforce Newton's mortgage to recover any of the money Newton borrowed even though Newton applied $55,034.74 of the borrowed money to the purchase price of her house. Although we recognize that the district court's interpretation of Minn. Stat. § 507.02 is a reasonable interpretation of the statutory language, and we see merit in an interpretation that requires a determination that a single conveyance either is, or is not, a purchase-money mortgage, we conclude that the harsh result produced by the district court's interpretation of Minn.Stat. § 507.02 is not consistent with the policy objective of the statute.

■ The supreme court has explained that Minn.Stat. § 507.02 "evidences the clear and unambiguous legislative policy of ensuring a secure homestead for families." *Dvorak v. Maring,* 285 N.W.2d 675, 677–78 (Minn.1979). The basic policy objective of the statute is "protecting the alienation of the homestead without the willing signatures of both spouses." *Id.* at 678.

In order to insure a stable and independent citizenry and thereby promote the public welfare, it has always been the policy of the law to protect with jealous zeal the homestead right of the citizen and his wife and minor children. This right is based on the fundamental conception that the home should be a citadel of security against the misfortunes and uncertainties of life. Our statutes have been carefully designed to effectuate this policy and to preserve the homestead to the family even at the sacrifice of just demands.

*Holden v. Farwell, Ozmun, Kirk & Co.,* 223 Minn. 550, 558–59, 27 N.W.2d 641, 646 (1947) (citations omitted).

But the legislative policy of preserving the homestead against even just demands does not extend to preserving the homestead against demands for unpaid purchase money. *Craig v. Baumgartner,* 191 Minn. 42, 254 N.W. 440 (1934), which involved circumstances somewhat similar to the facts before us, illustrates the limits of legislative policy that the supreme court has recognized when applying the law to protect the homestead right of a citizen who did not join in his spouse's attempt to convey an interest in their homestead.

In *Craig,* Catherine Craig entered into a contract for deed in 1909 to purchase a house for $5,500. *Id.* at 43, 254 N.W. at 440. Craig and her husband occupied the house as their homestead. *Id.* In 1916, while still owing $2,200, Craig failed to make the payments under the contract for deed. *Id.* Also in 1916, entirely apart from the contract for deed, Craig's husband became indebted to the contract-for-deed vendor in the amount of $2,500. *Id.* Craig surrendered the original contract to the vendor and entered into a new contract in which the vendor agreed to convey the property upon payment of $4,700, which represented the unpaid balance of the 1909 contract and the husband's separate debt to the vendor. *Id.* The husband signed

the new contract only as a witness. *Id.* Craig paid a substantial amount under the 1916 contract and then went into default. *Id.*

In 1932, after the contract-for-deed vendor died, the representatives of his estate served the proper statutory notice to cancel the 1916 contract. *Id.*, 254 N.W. at 441. Craig brought suit to enjoin the cancellation on the grounds that the 1916 contract was an equitable mortgage. *Id.* The trial court made findings and ordered judgment for the estate. *Id.* at 43–44, 254 N.W. at 441. Relying on the predecessor to Minn.Stat. § 507.02, which was not substantively different from the current statute,[1] the supreme court reversed and ordered a new trial.

The rationale of the supreme court's decision was that when Craig surrendered the 1909 contract for deed, she did so by merely handing over the contract without any accompanying written instrument. *Id.* at 44, 254 N.W. at 441. But at the time she did so, she had paid more than one half of the purchase price for the property and had an equitable interest in the property to the extent of payments made. *Id.* Therefore, under the statute, if the property was a homestead, Craig could not alienate this equitable interest by surrendering the contract without the signature of her husband. *Id.* Consequently, because the record did not show that there was ever any attempt to cancel the 1909 contract according to the statutory cancellation procedure, the 1909 contract remained in force, and the 1916 contract was of no effect. *Id.* The supreme court explained that the execution of the 1916 contract

represented a misconceived notion of the status of the parties. Where a person holds a contract for deed which has not been canceled or validly surrendered, the taking of another contract on the same land is of no effect. The argument that the second contract is a mortgage when the first one is still in force defeats itself.

*Id.*

But because the case had been tried on the theory that the 1909 contract had been validly surrendered, and, therefore, the defendants had no reason to show at trial that the surrender did not violate the statutory predecessor of Minn.Stat. § 507.02, the supreme court ordered a new trial to give the defendants an opportunity to do so. The court explained:

If defendants can show a valid cancellation of the 1909 contract, that the property was not plaintiff's homestead, or that there was a written instrument signed by plaintiff's husband accompanying the surrender of the 1909 contract, they should be given a chance so to do. In the event that they are not able so to do, defendants should recover nothing, and, upon payment of the balance due under the 1909 contract, if any, plaintiffs should be entitled to the land in fee. **Even if defendants are able to show a valid surrender of the 1909 contract and if it is found that the 1916 contract is a mortgage, we do not think that under our statute it can be a mortgage for more than the amount of the unpaid purchase price on the 1909 contract.**

*Id.* at 48, 254 N.W. at 443 (emphasis added).[2]

---

**1.** 2 Mason Minn. St.1927, § 8340, the statute cited by the supreme court, stated:

But if the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or other

alienation thereof, shall be valid without the signatures of both husband and wife.

**2.** We recognize that this statement in *Craig* is dicta. But we find the statement to be a persuasive explanation of the meaning of an

In other words, even if the representatives of the vendor's estate could show that the surrender of the 1909 contract for deed was valid because it did not violate the statutory requirement that both spouses sign a conveyance of a homestead, the 1916 contract, which was not signed by Craig's husband, could convey a mortgage interest only in the unpaid purchase price under the 1909 contract. Any mortgage interest created by the 1916 contract could not apply to the husband's $2,500 debt that the 1916 contract was also intended to secure.

■ This is precisely the situation presented in the present case. Newton's mortgage is for an amount that includes the unpaid purchase price on her contract for deed and other debts unrelated to the purchase of her homestead. Under the supreme court's statement in *Craig*, the mortgage cannot be for an amount greater than the unpaid balance of the contract for deed because the mortgage was not signed by both Newton and Witkowski. But this limitation on the amount of the mortgage does not invalidate the entire mortgage. There can be a valid mortgage in the amount of the unpaid purchase price under Newton's contract for deed.

We conclude that under Minn.Stat. § 507.02, to the extent that the mortgage Newton signed secures amounts other than the unpaid purchase price under Newton's contract for deed, the mortgage is invalid. But to the extent that the mortgage secures the $55,034.74 unpaid purchase price under the contract for deed, it is a mortgage for purchase money unpaid on the homestead. Therefore, the spousal-signature requirement in Minn. Stat. § 507.02 does not apply to that portion of the mortgage, and the mortgage is a valid mortgage for $55,034.74 even though it was not signed by Wikowski.

## 2. The Married Woman's Act

■ Wells Fargo argues that because Newton entered into the contract for deed and acquired an interest in the property when she was single, she had a right under Minn.Stat. § 519.02 to mortgage the property free from Witkowski's control. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

Minn.Stat. § 519.02 (1998) states:

All property, real, personal, and mixed, and all choses in action, owned by any woman at the time of her marriage, shall continue to be her separate property, notwithstanding such marriage; and any married woman, during coverture, may receive, acquire, and enjoy property of every description, and the rents, issues, and profits thereof, and all avails of her contracts and industry, free from the control of her husband, and from any liability on account of his debts, as fully as if she were unmarried.

■ Minn.Stat. § 519.02 was originally enacted to abolish the common-law concept of legal unity of husband and wife. *Gillespie v. Gillespie*, 64 Minn. 381, 383, 67 N.W. 206, 207 (1896). The legal-unity concept deprived a married woman of a separate legal existence and the right to a legal estate in her own property. *Id.* In enacting the statute, the legislature sought to eliminate the disabilities concomitant to being a married woman by, among other things, placing married women on an equal

---

ambiguous statute because it was made almost 70 years ago, and during the intervening period, Minn.Stat. § 507.02 has not been substantively changed. *Cf. In re Estate of Bush,*

302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) (stating that supreme court dicta is entitled to "considerable weight" if it contains "an expression of the opinion of the court").

footing with their husbands "in respect to the management and control of [their] separate property." *Drake v. Drake*, 145 Minn. 388, 390, 177 N.W. 624, 624 (1920) (emphasis added), *overruled on other grounds by Beaudette v. Frana*, 285 Minn. 366, 373 n. 10, 173 N.W.2d 416, 420 n. 10 (1969).

■ "By its terms, the statute clearly applies to property a wife acquires separately from her husband before the marriage." *Abrahamson v. Abrahamson*, 613 N.W.2d 418, 422 (Minn.App.2000). The statute also applies to property a married woman acquires on her individual credit during the marriage. *Hoover v. Carver*, 135 Minn. 105, 108, 160 N.W. 249, 250–51 (1916). The statute, however, does not apply to property that a husband and wife acquire jointly during the marriage. *Abrahamson*, 613 N.W.2d at 422.

Because Newton acquired an interest in the property through a contract for deed before she was married, it appears that Minn.Stat. § 519.02 applies to this interest. But because Newton and Witkowski used the property as their homestead, Newton's right under Minn.Stat. § 519.02 to manage the property free from the control of her husband conflicts with the restriction in Minn.Stat. § 507.02 that prevents her from conveying the homestead without her husband's signature.

When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Minn.Stat. § 645.26, subd. 1 (2000).

Minn.Stat. § 519.02 applies to all property owned by a woman at the time of her marriage, and Minn.Stat. § 507.02 applies only to real property used by a married person as a homestead. Therefore, Minn. Stat. § 519.02 is a general provision in a law that applies to all property, and it conflicts with a special provision in Minn. Stat. § 507.02 that applies only to homestead property. Because Newton's right under Minn.Stat. § 519.02 to manage her property free from the control of her husband cannot be reconciled with the restriction in Minn.Stat. § 507.02 that prevents her from conveying the homestead without her husband's signature, the special provision in Minn.Stat. § 507.02 prevails and is an exception to the general provision in Minn.Stat. § 519.02.

The language in Minn.Stat. § 507.02 also indicates that it should be construed as an exception to Minn.Stat. § 519.02. Minn. Stat. § 507.02 states:

A spouse, by separate deed, may convey any real estate owned by that spouse, **except the homestead,** subject to the rights of the other spouse therein.

(Emphasis added.) This language recognizes the right of either spouse to convey that spouse's real estate, but explicitly states that this right does not include the right to convey the homestead.

■ This construction of section 519.02 is consistent with the legislative policy of placing married women on an equal footing with their husbands in respect to the management and control of their separate property. Under this construction, neither a married woman nor a married man who owns property at the time of the marriage and uses that property as a homestead during the marriage can mortgage the

property without regard to their spouse's homestead rights.

### 3. Wells Fargo's Claims Against Newton

■ Wells Fargo argues that the district court erred by dismissing its claims against Newton based on the promissory note that she signed at the same time as she signed the mortgage. In the memorandum that accompanied the summary judgment, the district court stated:

> [Wells Fargo] sued both parties claiming this matter involved a purchase money mortgage. [Wells Fargo] did not plead any alternative theories of recovery against either defendant. Since this court determines that the transaction is a refinancing, this action is dismissed as to both respondents.

Minn. R. Civ. P. 8.01 states:

> A pleading which sets forth a claim for relief * * * shall contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought; if a recovery of money is demanded, the amount shall be stated. Relief in the alternative or of several different types may be demanded.

■ The purpose of the complaint is to advise the defendant as to the nature of the plaintiff's claim. *Willison v. N. Pac. Ry.*, 111 Minn. 370, 373, 127 N.W. 4, 5 (1910). In determining whether a complaint states a claim, the test is whether the facts alleged, liberally construed, entitled plaintiff to any relief, either legal or equitable. *Lucas v. Medical Arts Bldg. Co.*, 207 Minn. 380, 383, 291 N.W. 892, 894 (1940).

In its complaint, Wells Fargo alleged:

> That said Defendant Michelle R. Newton aka Michelle R. Newton–Witkowski has failed, neglected and refused to pay the installments upon said Note and Mortgage which became due on May 1, 2000 and on the first day of each and every month since that date. That because of the default Plaintiff, by virtue of the acceleration clause contained in said Mortgage does hereby elect and declare the total of principal and interest due and payable immediately. That there is due and owing upon said Mortgage the sum of One Hundred Sixteen Thousand Three Hundred Eighty Five and 95/100 ($116,385.95) Dollars together with interest from April 1, 2000 at the mortgage rate.

Wells Fargo's complaint also included the following request:

> That Plaintiff have judgment against the Defendant Michelle R. Newton aka Michelle R. Newton–Witkowski for the sum of $116,385.95 plus interest, from and after April 1, 2000 at the note rate, costs and disbursements, including attorneys' fees as allowed by law in such an amount as the Court shall determine.

This language satisfies the requirements of rule 8.01. It is a short and plain statement of Wells Fargo's claim that it is entitled to a judgment against Newton for money owed under the promissory note, and it demands recovery of a specific amount of money. The language also advised Newton as to the nature of the claims against her. Therefore, we reverse the district court's dismissal of Wells Fargo's claim against Newton based on the promissory note that she signed.

### DECISION

Because $55,034.74 of the amount Newton obtained by means of the mortgage on her homestead was applied to the purchase price of the homestead, the mortgage is a valid mortgage for purchase money unpaid in that amount even though Witkowski did not sign the mortgage. But because Witkowski did not sign the mortgage, the

mortgage is not valid for any amount greater than $55,034.74. Newton did not have a right under Minn.Stat. § 519.02 to convey the homestead without Witkowski's signature. Wells Fargo's complaint adequately stated a claim against Newton for money owed under the promissory note. The district court's determination that the mortgage Newton signed is not valid without Witkowski's signature is affirmed to the extent that the mortgage secures any amount greater than $55,034.74. The district court's dismissal of Wells Fargo's claim against Newton for money owed under the promissory note is reversed and remanded.

**Affirmed in part, as modified, reversed and remanded in part.**