**WELLS FARGO HOME MORTGAGE, INC., Appellant,**

v.

**Edward R. CHOJNACKI, et al., Defendants,**

**Tamara M. Chojnacki, Respondent.**

No. C6–03–121.

Court of Appeals of Minnesota.

Aug. 19, 2003.

Mark E. Greene, Frank A. Janes, Stand-ke Greene & Greenstein, Ltd., Minneton-ka, for appellant.

Joel R. Welder, Wollschlager, Tow, Welder & Ringquist, P.A., Fairmont, for respondent.

Considered and decided by WILLIS, Judge, HUDSON, Judge, and FORSBERG, Judge.*

## OPINION

WILLIS, Judge.

In a mortgage-foreclosure action, appellant challenges the district court's grant of summary judgment to respondent, arguing that the district court erred by concluding that the mortgage held by appellant was not a purchase-money mortgage and therefore not exempt from the spousal-signature requirement of Minn.Stat. § 507.02 (2002). Because we conclude that the district court did not err, we affirm.

## FACTS

This dispute arises out of an attempt by appellant Wells Fargo Home Mortgage, Inc. to foreclose its mortgage on property that is the homestead of respondent Tamara M. Chojnacki ("respondent"). The facts are largely undisputed.

In December 1995, respondent's then-husband, Edward R. Chojnacki ("Chojnacki"), purchased the property in question under a contract for deed. He satisfied the terms of the contract in December 1996 and received a warranty deed. In 1997, Chojnacki and respondent executed two mortgages on the homestead. Fire destroyed the house on the land in April 1998, and Chojnacki and respondent used the insurance proceeds to satisfy the two mortgages.

In October 1998, Chojnacki and respondent borrowed more than $85,000 from

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Greentree Financial for the purchase and installation of a mobile home on the land. They secured the loan with a mortgage on the land and a security interest in the mobile home.

In June 1999, Chojnacki borrowed $92,850 from Wells Fargo and secured the loan with a mortgage on the homestead. Although the mortgage document refers to Chojnacki as "a married person," respondent did not sign it. With $84,934.04 of the proceeds from the Wells Fargo loan, Chojnacki satisfied the balance of the loan secured by the Greentree mortgage.

Chojnacki and respondent dissolved their marriage in February 2002. The district court found that Chojnacki had "clearly committed waste on the real property of the marital estate" and "[f]or this reason and Wife's poor financial condition," the court determined that a disproportionate division of real property was warranted. The court awarded respondent the homestead "free and clear of any claim" by Chojnacki but subject to all "judgments, mortgages, and other encumbrances."

Chojnacki had defaulted on the Wells Fargo loan in early 2001, and Wells Fargo began foreclosure proceedings against him and respondent in July 2001. Wells Fargo's initial petition for a declaratory judgment and foreclosure stated that its mortgage was a "refinance of an existing mortgage rather than a purchase money mortgage," and Wells Fargo sought an order declaring the mortgage valid "despite the failure to comply with Minn.Stat. § 507.02." In an amended petition, Wells Fargo contended that its mortgage was a purchase-money mortgage because it had "replaced the Green Tree purchase-money mortgage as the first mortgage on the premises."

Chojnacki did not respond to Wells Fargo's petition, and Wells Fargo obtained a default judgment against him in January 2003. Respondent filed a cross-claim against Wells Fargo, seeking a declaratory judgment that the mortgage was defective because she had not signed it. Respondent and Wells Fargo moved for summary judgment, and in November 2002, the district court granted summary judgment to respondent. This appeal follows.

## ISSUE

Did the district court err by concluding that Wells Fargo's mortgage was not a purchase-money mortgage for purposes of Minn.Stat. § 507.02 (2002)?

## ANALYSIS

Wells Fargo argues that the district court erred by granting summary judgment because (1) the mortgage was a purchase-money mortgage, which is exempt from the spousal-signature requirement in Minn.Stat. § 507.02 (2002); (2) respondent is estopped from denying the validity of the mortgage because she ratified it; and (3) Wells Fargo should be equitably subrogated to Greentree's rights as a purchase-money mortgagee. On appeal from summary judgment when the parties agree that the material facts are not in dispute, appellate review is limited to determining whether the district court erred in its application of the law. *Reads Landing Campers Ass'n v. Township of Pepin,* 546 N.W.2d 10, 13 (Minn.1996). When the district court grants summary judgment based on its application of statutory language to undisputed facts, its conclusion is one of law, and our review is de novo. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

*Application of Minn.Stat. § 507.02*

Wells Fargo argues that its mortgage is exempt from section 507.02, which provides:

If the owner is married, no conveyance of the homestead, except a mortgage for purchase money unpaid thereon, * * * shall be valid without the signatures of both spouses.

Minn.Stat. § 507.02. A mortgage is a "conveyance" for purposes of section 507.02. *See* Minn.Stat. § 507.01 (2002). Wells Fargo contends that its mortgage is a purchase-money mortgage, and therefore exempt from the spousal-signature requirement, because the proceeds of the Wells Fargo loan were used to satisfy the Greentree loan, which respondent and Chojnacki used to purchase their mobile home.

Section 507.02 does not define "purchase-money mortgage." In *Marin v. Knox*, 117 Minn. 428, 431, 136 N.W. 15, 16 (1912), the supreme court determined that the mortgage at issue in that case was a purchase-money mortgage because the loan secured by the mortgage was used to satisfy the balance of the purchase price for a parcel of land. The court noted that the deed to the land was not delivered to the buyer until the seller had received all of the purchase price. *Id.; see also* 4 Richard R. Powell, *Powell on Real Property* 37.28[1] (2003) (stating that "the key to * * * characterization" as a purchase-money mortgage "is that the loan funds are used to make the purchase of the property possible"). Here, there was no unpaid balance of the purchase price for the land because, at the time Wells Fargo made its loan, respondent and Chojnacki already owned the land free of any encumbrances. And they paid the full purchase price of the mobile home with the proceeds of the loan that was secured by the Greentree mortgage. The Wells Fargo mortgage could not be a purchase-money mortgage because it was not given to secure any unpaid portion of the purchase price of the land or the mobile home. *See O'Hallo-*

*ran v. Marriage*, 167 Minn. 443, 445, 209 N.W. 271–72 (1926).

Wells Fargo cites *Wells Fargo Home Mortgage, Inc. v. Newton*, 646 N.W.2d 888 (Minn.App.2002), *review denied* (Minn. Sept. 25, 2002), for the proposition that its mortgage is a purchase-money mortgage. In *Newton*, this court held that a mortgage that secured a loan used to pay off a contract for deed was a purchase-money mortgage. *See id.* at 899. Wells Fargo contends that the only difference between the facts in *Newton* and the facts here is that *Newton* involved the satisfaction of a contract for deed, while Chojnacki used the loan to satisfy a mortgage, and that this difference is of no significance. But we conclude that this is a significant difference. In *Newton*, a portion of the purchase price had not yet been paid when the buyer executed the mortgage because she still owed about $55,000 under the contract for deed. *See id.* at 891. Before she paid a portion of the funds from the mortgage loan to the seller and satisfied the contract for deed, *see id.*, legal title remained in the seller, and the buyer had only equitable title, *see In re S.R.A., Inc.*, 219 Minn. 493, 507, 18 N.W.2d 442, 450 (1945). Here, as we noted earlier, respondent and Chojnacki used the Greentree loan to satisfy the unpaid purchase price of the mobile home, and they thereby received both legal and equitable title, leaving Greentree's interest to be that of a lienholder. *See Romanchuk v. Plotkin*, 215 Minn. 156, 161, 9 N.W.2d 421, 424–25 (1943).

Finally, Wells Fargo's suggested interpretation of section 507.02 yields an absurd result, which we presume the legislature does not intend. *See* Minn.Stat. § 645.17(1) (2002). Under Wells Fargo's reading, any mortgage would be a purchase-money mortgage so long as some portion of the funds from the loan secured

by the mortgage was used to satisfy a loan for purchase money. Accordingly, even a second or third refinance mortgage would be a purchase-money mortgage, and therefore exempt from the signature requirement, because it would be used to satisfy a mortgage that satisfied another mortgage that satisfied the first mortgage, which secured the loan for the purchase money. Given that the spousal-signature requirement "evidences the clear and unambiguous legislative policy of ensuring" the security of the homestead, *Dvorak v. Maring,* 285 N.W.2d 675, 677 (Minn.1979), it is unlikely that the legislature intended such a far-reaching exception to the signature requirement.

## Estoppel by Ratification

■■ Wells Fargo further contends that respondent ratified the mortgage and is therefore estopped from contesting its validity. Ratification occurs when a person with "full knowledge of all the material facts, confirms, approves, or sanctions, by affirmative act or acquiescence, the originally unauthorized act of another." *Anderson v. First Nat'l Bank of Pine City,* 303 Minn. 408, 410, 228 N.W.2d 257, 259 (1975) (citing *Fox v. Morse,* 255 Minn. 318, 96 N.W.2d 637 (1959); *Strader v. Haley,* 216 Minn. 315, 12 N.W.2d 608 (1943)). A person ratifies his unauthorized signature upon an instrument if he receives and retains the proceeds or the benefits of the unauthorized signature. *Strader,* 216 Minn. at 328, 12 N.W.2d at 614.

We are not convinced that respondent's conduct constituted a ratification of the Wells Fargo mortgage. She stated that she learned of the Wells Fargo mortgage only after receiving notice in the mail that the Greentree mortgage had been satisfied, and she said she was "mad" about Chojnacki's actions. When respondent became aware that the mortgage was likely invalid because it lacked her signature, she filed a cross-claim against Wells Fargo and sought to have the mortgage declared invalid.

■■ Further, estoppel is an equitable remedy, *N. Petrochemical Co. v. U.S. Fire Ins. Co.,* 277 N.W.2d 408, 410 (Minn.1979), and we conclude that application of an equitable remedy should not allow Wells Fargo to avoid the spousal-signature requirement of section 507.02. "[A] court of equity will not disregard statutory law or grant relief prohibited thereby." *Kingery v. Kingery,* 185 Minn. 467, 470, 241 N.W. 583, 584 (1932); *see also U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn.1981) (denying equitable relief when it would circumvent statutory restrictions). Section 507.02 unambiguously requires the signatures of both spouses for non-purchase-money mortgages. To hold that respondent is estopped from asserting the protection of the requirement would be to circumvent the requirement.

## Equitable Subrogation

■■ Finally, Wells Fargo argues that it should be equitably subrogated to Greentree's rights as a purchase-money mortgagee. Under the doctrine of equitable subrogation, a person who has discharged the debt of another may succeed in substitution to the rights and position of the satisfied creditor. *First Nat'l Bank of Menahga v. Schunk,* 201 Minn. 359, 363, 276 N.W. 290, 292–93 (1937). This equitable principle will be applied in the interest of substantial justice when one party provides funds used to discharge another's obligations if (1) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (2) injury to innocent parties will otherwise result. *Carl H. Peterson Co. v. Zero Estates,* 261 N.W.2d 346, 348 (Minn.1977).

Wells Fargo has not shown that it acted under a justifiable or excusable mistake of fact. The document evidencing the mortgage from Chojnacki identifies him as "a married person," and Wells Fargo provides no explanation for its failure to obtain respondent's signature. Indeed, Wells Fargo's initial foreclosure petition acknowledged its failure to comply with section 507.02.

Further, allowing the Wells Fargo mortgage to be equitably subrogated to the Greentree mortgage would circumvent the spousal-signature requirement in the same way that applying estoppel by ratification would. We decline, therefore, to do so.

## DECISION

The Wells Fargo mortgage is not a purchase-money mortgage and is not, therefore, exempt from the spousal-signature requirement in Minn.Stat. § 507.02 (2002). Further, respondent did not ratify the mortgage, and Wells Fargo is not entitled to equitable subrogation.

**Affirmed.**