*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0116**

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-19CB, Mortgage Pass Through Certificates, Series 2005-19CB,
Respondent,

vs.

Marvin G. Westrom, et al.,
Appellants,

Bremer Bank, National Association, et al.,
Defendants.

**Filed January 9, 2017
Affirmed
Hooten, Judge**

Grant County District Court
File No. 26-CV-13-235

Nathan L. Seeger, Nathan Seeger Law Office, Fergus Falls, Minnesota (for appellant)

Bradley N. Beisel, David J. Krco, Beisel & Dunlevy, P.A., Minneapolis, Minnesota (for respondent The Bank of New York Mellon)

Michelle Jester, Messerli & Kramer, P.A., Minneapolis, Minnesota (for defendants)

Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant homeowners argue that the district court erred in applying the doctrine of ratification to a non-purchase-money mortgage interest in a homestead.[1] We affirm.

**FACTS**

Appellants Marvin G. Westrom and Constance M. Westrom are a married couple. At all relevant times to this action, the Westroms owned a residence in Elbow Lake, Minnesota which was the couple's homestead (the homestead). In early 2005, Constance Westrom applied for a loan from Advisor's Mortgage, LLC, in her own name, to consolidate the homestead purchase-money mortgage and additional consumer debt, and provide liquidity.[2] This loan was to be secured by a mortgage on the homestead (the Advisor's mortgage).

Kim Parsons from First American Title closed the Advisor's mortgage. Marvin Westrom could not attend the 2005 closing, so Parsons arranged for him to execute a power of attorney authorizing his wife to sign on his behalf. However, due to defects in that power of attorney, it was invalid. After Constance Westrom signed the mortgage herself and on behalf of her husband, Advisor's disbursed $322,400 to the Westroms. Shortly after disbursing the funds, Advisor's assigned the mortgage. Respondent and cross-

---

[1] In its related appeal, respondent mortgagee argues that the district court erred in rejecting estoppel as an alternative basis for validating the mortgage. But, because we conclude the district court did not err in its application of the doctrine of ratification, we need not address respondent mortgagee's arguments relating to alternative legal theories for validating the mortgage interest.

[2] The underlying note at issue is in Constance Westrom's name only.

appellant Bank of New York Mellon (BNYM) is the current assignee of the mortgage. The mortgage was never recorded, and the 2005 original signed copy was lost.

For the next five years, the Westroms made payments on the Advisor's mortgage from Marvin Westrom's bank account. In 2010, Parsons was made aware that the Advisor's mortgage had not been recorded and the original was lost. From June 2010 to January 2011, Parsons communicated with Constance Westrom in an attempt to have the Westroms sign a new copy of the Advisor's mortgage. Parsons emailed Constance Westrom the entire 2005 Advisor's mortgage on at least two occasions. However, the two agreed that Parsons would print out only the signature page from the 2005 mortgage, which the Westroms would sign and return. In January 2011, the Westroms signed the single signature page and had it notarized. After the Westroms returned the signature page to Parsons, she attached the notarized signature page to a copy of the Advisor's mortgage, and recorded the resulting mortgage document (the 2011 mortgage).

Constance Westrom filed for Chapter 13 bankruptcy protection in September 2011. In 2013, BNYM brought a quiet title action seeking, inter alia, a judicial determination that BNYM held a valid mortgage interest in the homestead. After a bench trial, the district court concluded that although Marvin Westrom did not sign the Advisor's mortgage in 2005 and it was invalid at that time, when Marvin Westrom signed the 2011 mortgage, this ratified Constance Westrom's 2005 grant of the Advisor's mortgage, and BNYM had a valid interest as of that date. Both parties now appeal.

**D E C I S I O N**

The district court found that by signing the 2011 mortgage, Marvin Westrom "ratified Ms. Westrom's 2005 conveyance" and "[his] signature acts as his adoption and confirmation of the mortgage." On appeal, the Westroms argue that the district court erred in applying the principle of ratification in its determination of the effect of Marvin Westrom's 2011 signature on the underlying Advisor's mortgage. We disagree.

In an appeal from a bench trial, our review is "limited to determining whether the district court's findings are clearly erroneous and whether the court erred as a matter of law." *Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 457 (Minn. App. 2001), *review denied* (Minn. July 24, 2001). Findings of fact will be reversed only if we are "left with a definite and firm conviction that the district court has made a mistake." *Id.* (quotation omitted). We review legal issues de novo. *Id.*

Minn. Stat. § 507.02 (2010) provides that, with the exception of certain circumstances not present in this case, "[i]f the owner is married, no conveyance of the homestead . . . shall be valid without the signatures of both spouses." The parties do not dispute that Marvin Westrom did not effectively sign the Advisor's mortgage in 2005, and therefore the Advisor's mortgage violated section 507.02 at that time. The Westroms contend that because Marvin Westrom did not sign the Advisor's mortgage in 2005, it is wholly void under Minn. Stat. § 507.02, and may not be ratified by later conduct.

However, before reaching the substance of the Westroms' argument, we must first address the effect of the Westroms' signature on the 2011 mortgage document's signature page. Woven throughout the Westroms' explicit challenge to the applicability of

4

ratification is an implicit assumption that the single signature page that the Westroms signed in January 2011 must be viewed as a contract alone and independent of the 12 pages that were attached after the signature page was notarized. The validity of this "one-page" theory must be addressed first, so as to provide the proper lens through which to determine the effect of Marvin Westrom's actions.

When there is a dispute as to what is included within a contract, "the existence and terms of a contract are questions for the fact finder." *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992). To assist in that inquiry, a court "may look behind words to consider the surrounding facts and circumstances in the context of the entire transaction, including the purpose, subject matter and nature of it." *Powell*, 626 N.W.2d at 460 (quotation omitted). We will reverse a district court's finding as to the existence of a contract only if that finding is manifestly contrary to the evidence. *Id.*

The district court found that Parsons emailed the Westroms the complete, 13-page mortgage document in June 2010 and again in January 2011. Due to issues with her printer, Constance Westrom, in an arrangement agreed to by Parsons, only printed the signature page from the email sent to her by Parsons. The Westroms executed the signature page in the presence of a notary, after explaining to the notary what the page represented. Constance Westrom then returned the signature page to Parsons, and they agreed that Parsons would attach the first 12 pages of the mortgage document as set forth in the email to the signature page before recording the mortgage, which Parsons subsequently did. Based on these facts, the district court declined to accept the Westroms' "one-page" theory.

While there is some ambiguity as to precisely why only a single page of the agreement was printed and signed instead of the entire agreement and why the parties did not compile the agreement promptly, we cannot ignore the evidence in the record that the Westroms and BNYM possessed identical copies of the same contract in digital form and both parties objectively intended to be bound to that contract at the time of signing. The Westroms had the full mortgage document in their possession for six months before it was signed. Both Constance and Marvin Westrom testified at trial that they knew the signature page that they signed in January 2011 related to an error in the 2005 Advisor's mortgage. The signature page is not a blank document as the Westroms claim, but contains multiple references to being part of a whole.[3] And importantly, the Westroms have made no claims of fraud or mistake; they do not contend that the 12 pages stapled to the signature page are different from the 12 pages that they had in their possession by email for the six months prior to signing the last page. Moreover, in accordance with the terms of the mortgage document, the Westroms continued to make regular payments on their mortgage for several months after signing the 2011 mortgage.

In sum, there is adequate evidence in the record demonstrating that the Westroms understood that the single page document was part of the larger, complete Advisor's mortgage, and not a single page with unknown terms and conditions. Therefore, the district court's conclusion that the Westroms' signatures to the 2011 mortgage signature page

---

[3] The signature page begins: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument. . . ." and ends "Page 13 of 13."

represented their agreement to be bound by all 12 pages of the mortgage and the signature page is not manifestly contrary to the evidence.

Having established that the Westroms endorsed the 2011 mortgage agreement as a whole, we turn to the Westroms' argument that the district court erred in determining that Marvin Westrom's signing of the 2011 mortgage document ratified the Advisor's mortgage originally signed in 2005. The Westroms concede that a non-signing spouse may adopt or confirm a non-purchase-money mortgage interest in a homestead. *See Marr v. Bradley*, 239 Minn. 503, 509, 59 N.W.2d 331, 334 (1953) ("[T]he contract to convey a homestead executed by one spouse but not joined in by the other is wholly void and that the buyer acquires no rights under it whatsoever. Until it is adopted or confirmed by the spouse not signing, it has no validity for any purpose."). But the Westroms argue that there is a material difference between a non-signing spouse adopting or confirming a mortgage, as was the case in *Marr*, and a non-signing spouse ratifying a mortgage. We disagree.

The Westroms seek support for this argument in our decision in *Wells Fargo Home Mortg., Inc. v. Chojnacki*, 668 N.W.2d 1 (Minn. App. 2003). In *Chojnacki*, we noted the well-settled principle that ratification occurs when a person "with full knowledge of all the material facts, confirms, approves, or sanctions, by affirmative act or acquiescence, the originally unauthorized act of another." *Id.* at 5. (quotation omitted). But, we specifically found that the non-signing spouse's conduct in that case did not constitute ratification. *Id.* ("We are not convinced that respondent's conduct constituted a ratification of the Wells Fargo mortgage."). For that reason, we did not differentiate between adoption, confirmation, and ratification. *See id.*

Further, the Westroms cite no additional legal authority, and we are aware of none, supporting the conclusion that the standard for adoption or confirmation of a mortgage and the standard for ratification of a mortgage are materially different. In fact, the three terms have often been used interchangeably in the mortgage context. *See State Bank of Loretto v. Loose*, 198 Minn. 222, 225, 269 N.W. 399, 401 (1936) ("Ratification, on the other hand, means confirmation.") (quotation omitted); *Dairy Region Land Co. v. Paulson*, 160 Minn. 42, 47–48, 199 N.W. 398, 400 (1924) ("Ratification means adoption of that which was done for and in the name of another.") (quotation omitted); *Wilson v. Hayes*, 40 Minn. 531, 538, 42 N.W. 467, 470 (1889) ("[T]his would, according to all the authorities, amount to a ratification or adoption, whichever it may be called."). When the district court used the terms ratification, confirmation, and adoption, it was using three synonyms for the same concept.

In the mortgage context, ratification has three requirements. First, the ratifying party must possess "full knowledge of all the material facts." *Chojnacki*, 668 N.W.2d at 5. (quotation omitted). Second, the ratifying party must "confirm[], approve[], or sanction[], by affirmative act or acquiescence, the originally unauthorized act of another." *Id.* (quotation omitted). Finally, "ratification must be by an act of the character required for the original authority." *Gresser v. Hotzler*, 604 N.W.2d 379, 385 (Minn. App. 2000) (quotation omitted). In other words, the ratification of a non-purchase-money mortgage interest in a homestead must satisfy all the statutory provisions required of the original transfer of the mortgage interest. *See id.* at 385–86.

8

Marvin Westrom testified that in 2005 he both knew about and approved of his wife "taking out" the Advisor's mortgage. He also testified that he understood that the 2011 mortgage document he signed was a mortgage related to the loan from Advisor's in 2005. The Westroms had the 2011 mortgage document in their possession for six months before signing it, and the 2011 document was a copy of the mortgage Constance Westrom signed in 2005. It cannot be argued that Marvin Westrom did not have full knowledge of all the material facts of the Advisor's mortgage when he performed the affirmative act of signing the 2011 mortgage document. Therefore, if the 2011 mortgage document satisfied all statutory provisions required of a non-purchase-money mortgage transfer of a homestead interest in the first instance, Marvin Westrom's signature in 2011 was properly considered a ratification.

There are two relevant sets of statutory requirements for transferring a non-purchase-money mortgage interest in a homestead. First, the statute of frauds prohibits any transfer of an interest in real property, other than a lease of one year or less, unless that transfer is evidenced by a writing describing the interest to be transferred and signed by the party charged with performance. Minn. Stat. § 513.01, .04–.05 (2010). Second, section 507.02 requires the signature of both spouses for any conveyance of a non-purchase-money mortgage interest in a homestead. Whether a contract satisfies the statute of frauds is a question of law. *Simplex Supplies, Inc. v. Abhe & Svoboda, Inc.*, 586 N.W.2d 797, 800 (Minn. App. 1998), *review denied* (Minn. Feb. 24, 1999). The application of section 507.02 to the facts found is also a question of law. *Gores v. Schultz*, 777 N.W.2d 522, 526

9

(Minn. App. 2009), *review denied* (Minn. Mar. 16, 2010). We review questions of law de novo. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989).

When viewed as a whole, the 2011 mortgage agreement sufficiently describes the property interest at issue, the lender, the borrower, the terms, and the underlying obligation. The agreement is signed by both Constance and Marvin Westrom. Therefore, the requirements of both the statute of frauds and section 507.02 are satisfied.

Based on the satisfaction of all statutory requirements, coupled with Marvin Westrom's knowledge of the underlying obligation, we conclude that the district court did not err in finding that Marvin Westrom's affirmative act of signing the 2011 mortgage acted as a confirmation of the Advisor's mortgage originally signed by Constance Westrom in 2005. We therefore affirm the judgment that BNYM has a valid mortgage interest in the homestead as of the date the 2011 mortgage document was executed and delivered.

**Affirmed.**