# Rooney *et al. v.* Michael & Lyons *et al.*

*Bill in Equity to subject Wife's Property to Payment of Debts and to set aside Conveyance made Pendente Lite.*

1. *Decree in chancery removing disabilities of coverture.*—A decree in chancery removing the disabilities of coverture of a married woman, "so far as to invest her with the right to buy, sell, convey and mortgage real and personal property, and to sue and be sued as a *feme sole*," as to her separate estate, does not remove the husband from the trusteeship of her statutory estate, nor deprive him of any right conferred, or relieve him of any duty imposed by the statute then existing; and the capacity and rights of the wife are only enlarged to the extent specified.

2. *Creditor's remedies against equitable estate of married woman.*—A creditor may come into equity to subject the equitable estate of a married woman to the payment of debts contracted by her after the rendition of a decree in chancery relieving her of the disabilities of coverture, and authorizing her to sue and be sued as a *femme sole*.

3. *Purchase pendente lite.*—A person who has acquired a subsisting equitable right or interest in the subject-matter of a suit, before it was commenced, and who is not made a party, may procure the legal title pending the suit; but his equitable right or interest, to come within this rule, must be substantial and enforceable.

4. *Equitable and statutory estate; difference abolished.*—The act approved February 28th, 1887, (Code of 1886, §§ 2351 *et seq.*), abolishes the distinction previously recognized between equitable and statutory estates of married women, except where the property is conveyed to a trustee upon whom some active duties are imposed.

5. *Conveyance by married woman, or agreement to convey.*—Under the provisions of the act of February 28th, 1887 (Code of 1886, §§ 2346–48), a married woman can not, without the assent and concurrence of her husband, sell and convey property held by her, before the passage of the statute, as an equitable estate; and her agreement to convey, or a deed signed by her alone, passes no right or interest.

6. *When lis pendens begins.*—A bill being filed by creditors to subject to the payment of their debts property held by their debtor, a married woman, as an equitable estate prior to the passage of the statute ap-

[Rooney et al. v. Michael & Lyons et al.]

proved February 28th, 1887, and which she had contracted to sell and convey; the deed being signed by her before the bill was filed, but by the husband after it was filed, and delivered before the service of process on him; *held*, that the *lis pendens* began from the service of process on the wife.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS W. COLEMAN.

The bill was filed May 27, 1887, by Michael & Lyons *et al.* against Mrs. Untreiner and husband, to subject certain property of Mrs. Untreiner to the payment of her indebtedness to complainants. A supplemental bill was filed June 11th, 1887, making Mary C. Rooney an additional party, and setting up that a sale of said property had been made by Mr. and Mrs. Untreiner, to Mrs. McMahon, and by Mrs. McMahon and her husband to said Mary C. Rooney, during the pendency of this suit, and praying that said sales be declared void. The deed to Mrs. McMahon was signed by Mrs. Untreiner, in Mobile, on May 25th, and by Mr. Untreiner, in Birmingham, on May 28th. On May 30th, it was conveyed by Mr. and Mrs. McMahon to said Mary C. Rooney.

PILLANS, TORREY & HANAW, for appellants, on the question of *lis pendens*, cited Wade on Notice, 350; *Mead v. Lord Orrery*, 3 Atk. 235; 2 Pom. Eq. 639; *Sorell v. Carpenter*, 2 P. Wms. 482; Sugden's Vendors, 537; 25 Amer. Dec. 667. *Lis pendens* begins with service of *subpœna*, or perfection of publication.—75 Ala. 531; 15 Ala. 241; 22 Ala. 743; 2 Pom. Eq. 644; Wade's Notice, 348–49. The *lis pendens* must be against holder of legal title.—2 Wall. 237; 2 Pom. Eq. 637; Wade's Notice, 355. On the decree of free dealership, cited Code of 1876, § 2731; 72 Ala. 233; *Doe v. Burke*, 74 Ala. 530; 75 Ala. 306; *Ib.* 293; 76 Ala. 127; 78 Ala. 526; 81 Ala. 404; 74 Ala. 513; 78 Ala. 372.

GREGORY L. & H. T. SMITH, *contra*.—If it be admitted that the chancery decree gave a remedy at law, this did not oust the chancery jurisdiction.—*Lee v. Lee*, 55 Ala. 590; 1 Pom. Eq. §§ 279–80; 2 Story's Eq. Jur. §§ 1397, 1399; *Mitchell v. Otey*, 23 Miss. 236. Mrs. McMahon and Mrs. Rooney each purchased the property *pendente lite*, and the same is bound by and subject to the decree thereafter rendered in the case.—79 Ala. 590; 72 Ala. 79; 70 Ala. 253; *Jordan v. Smith*, 3 Sou. Rep. 707.

CLOPTON, J.—Mrs. Untreiner acquired, in March, 1885, by conveyance, which created an equitable separate estate, the real estate, which appellees seek by the bill to charge with debts contracted by her. In May, 1886, by decree of the chancellor, she was relieved of the disabilities of coverture as to her separate estate, "so far as to invest her with the right to buy, sell, convey and mortgage real and personal property, and to sue and be sued as a *feme sole*." The debts due complainants were contracted after the rendition of the decree, which is specially pleaded in defense of the suit. The ground of defense is, that the effect and operation of the decree is to convert the equitable separate estate into a legal estate discharged of the trusteeship of the husband; and that complainants dealt with her, not as a *feme covert*, but as a *feme sole*, having credit by reason of her personal liability, and of possessing a legal estate, and that their remedy is by action at law, and not in equity. The statute which authorized chancellors to relieve married women of the disabilities of coverture, and decrees rendered thereunder, have been considered and construed in several cases. The result of these decisions is, that the statute did not operate to remove the husband from the trusteeship of the wife's separate estate, or to deprive him of any right conferred, or to relieve him of any duties imposed, by the pre-existing statutes; and the wife was relieved of the disabilities of coverture only as to her separate estate, and as to this, only so far as the statute provides. In the execution of the specified powers, she was discharged from any restraint, or control of her husband, and was vested with power to make contracts touching and concerning property, which may create a personal liability on which a personal judgment could be rendered, but had no general power to contract.—*Cook v. Meyers*, 73 Ala. 580; *Parker v. Roswald*, 78 Ala. 526. By the statute and the decree, the character and status of the separate estate of Mrs. Untreiner were not changed, but remained the same as prior to the rendition of the decree, except her capacity to buy, sell, convey and mortgage real and personal property was enlarged.

That the chancery court had original jurisdiction to subject the equitable separate estate of a married woman to the payment of any debt contracted by her with the intention to charge it, is undoubted. It is a well settled and general principle, that a statutory enactment is essential to take from a court of equity its original jurisdiction of any subject mat-

ter. Mere affirmative words, conferring or enlarging the jurisdiction of courts of equity, do not oust or abridge the pre-existing jurisdiction. "The rule is well settled, that unless the statute contains negative words, or other language expressly taking away the pre-existing jurisdiction, or unless the whole scope of the statute, by its reasonable construction and its operation, shows a clear legislative intent to abolish that jurisdiction, the former jurisdiction of equity to grant its relief under the circumstances continues unabridged." *Lee v. Lee*, 55 Ala. 590; 1 Pom. Eq. Jur. §§ 276-279. The statute authorizing chancellors to remove the disabilities of coverture, confers upon a married woman the right to sue, and imposes liability to be sued as a *feme sole* in respect to any transactions or contracts made in the execution of the special and limited powers with which she is invested. In respect to such matters, her coverture opposes no obstacle to the assertion of rights and liabilities for or against her. As to these matters, jurisdiction is conferred on courts of law by affirmative words, in cases in which such courts would have jurisdiction if she were *sui juris*. But the statute contains no words, negative or other, which take away the former jurisdiction of the courts of equity in regard to the equitable separate estate of married women, nor any terms from which such legislative intent can be implied. The former jurisdiction remains unimpaired and unabridged. *Mitchell v. Otey*, 23 Miss. 236. The debts due complainants having been contracted prior to the passage of the act of February 28, 1887, which comprises sections 2341-2351 of the Code of 1886, the case does not come, in reference to this question, within the operation of those sections, and we intimate no opinion as to their effect. As to contracts made prior to the repeal of the statute, we have been considering, the rights and remedies, in existence when the contract was made, are not abolished.—*Jordan v. Smith*, 83 Ala. 299.

The bill does not seek to set aside the conveyances made by Mrs. Untreiner and her husband to Mrs. McMahon, and by the latter and her husband to Mrs. Rooney, as fraudulent, but on the ground that they are purchasers *pendente lite*. The admitted facts are, that prior to the filing of the bill, Mrs. Untreiner had agreed to sell the property to Mrs. McMahon at a stipulated price, and caused a deed to be prepared, which was signed and acknowledged by her March 25, 1887, two days before the bill was filed. The deed was signed by her husband on the day succeeding the filing of

the bill and was delivered to the grantee three or four days thereafter. On the day of its delivery, Mrs. McMahon and her husband made a deed to Mrs. Rooney. Process was served on Mrs. Untreiner before the deed was signed by her husband, but not on the husband until after the delivery of the deeds to the grantees. The defendants contend that the rule of *lis pendens* does not apply by reason of having acquired an interest in the property before the commencement of the suit. It will be conceded, that the doctrine of *lis pendens* does not apply to persons who have acquired a subsisting equitable right or interest in the subject matter of the suit before it was commenced, and who could and should have been made parties. Having an equity, and not having been made parties, such persons may, for their protection, procure the legal title, and their rights will not be affected by the pendency of the suit. They have a right to be heard, and are not regarded as intruders in the pending litigation. In order that the right or interest thus acquired may be effectual against the application of the rule, it must be substantial and enforceable; if by contract, a contract obligatory on the parties, which could have been enforced.—*Gibber v. Trimble,* 14 Ohio 323; *Clarkson v. Morgan,* 6 B. Mon. 441.

Mrs. Untreiner, having been relieved of the disabilities of coverture, which, under the statute, invested her with capacity to sell and convey the property, without her husband joining in the execution of the conveyance, it may be, could have made a binding contract of sale.—*Robinson v. Walker,* 81 Ala. 404. Had the statute been in force when the agreement to sell was made, there would have been some basis for the contention of defendants. But the act of February 28, 1887, which is comprised in article 3, chapter 1 of title 5 of Code 1886, repeals the pre-existing statutes, creating and regulating the separate estate of married woman, including the statute under which the decree was rendered, and establishes an entirely new system of laws. Section 2351 provides: "All property of the wife, whether acquired by descent or inheritance, or gift, devise or bequest, or by contract, or conveyance or by gift from a contract with the husband, is the separate property of the wife within the meaning, and is subject to all the provisions of this article, saving and excepting only such property as may be conveyed to an active trustee for her benefit." The distinction, which had heretofore prevailed and been preserved between equitable and statutory separate estates, is abrogated, except in cases

[Rooney et al. v. Michael & Lyons et al.]

where the property is conveyed to an active trustee—a trustee having some duties to perform in reference to the property. With this single exception, equitable separate estates are now statutory. The right or power of the wife to bind or charge as a *feme sole* her equitable separate estate, created by conveyance directly to her, is taken away. She has full capacity to contract concerning such separate estates only in writing, and with the assent or concurrence of her husband expressed in writing.—Sec. 2346. She is incapacitated to alienate her lands or any interest therein, without the consent or concurrence of the husband, manifested by his joining in the alienation in the mode prescribed by the law, when he is of sound mind, and has not abandoned her, or is not a non-resident of the State, or is not imprisoned under a conviction for crime exceeding two years.—Sec. 2348. The provisions of the act of February 28, 1887, though not retroactive as to contracts and transactions prior to its passage, apply and govern as to contracts and transactions made after it took effect, the capacity of a married woman to charge, alien and dispose of, or contract in reference to property conveyed directly to her, which, under the former system of laws, constituted an equitable separate estate. She can not bind or charge it by any promise or act of her own. Her mere agreement to sell her real estate, without the consent or concurrence of her husband, expressed in writing, is void under the statutes, and a court of equity will not enforce it against her; and her conveyance, without the consent or concurrence of the husband, shown in the mode prescribed, will not operate as a contract to convey.—*Blythe v. Dargin*, 68 Ala. 370. Wherefore, the agreement to sell prior to the commencement of the suit was not a valid and enforceable contract, and passed no right or interest to the purchasers. There was no alienation of the lands, or of any interest therein, until the deed was signed by the husband of Mrs. Untreiner and delivered to the grantee. This was after the filing of the bill, and service of process upon Mrs. Untreiner.

Defendants further contend that the doctrine of *lis pendens* does not apply, because process was not served upon the husband of Mrs. Untreiner, until after the delivery of the conveyances. This contention is founded on the settled rule, that a holder of the legal title must have been impleaded at the time of the purchase to affect a purchaser, who comes in under him, with constructive notice of the equity claimed

in the bill, and that the suit will not be regarded as commenced, until actual service of the process, so as to constitute *lis pendens*. Such is undoubtedly the rule, where it is sought to charge a person, who has acquired the legal title, with constructive notice of a latent, outstanding equity. But it may well be doubted, whether it applies to a case like the present, where the legal title is not vested in the trustee by express grant or conveyance. Be this as it may, service of process upon the husband of Mrs. Untreiner was not requisite under the circumstances of this case, to affect the grantees with constructive notice of the claim of complainants. Whatever right or title he had in the real estate, conveyed directly to the wife for her sole and separate use, arose from his trusteeship by operation of law, and as an incident to his relation of husband. By the statutes, the lands, with the rents, incomes and profits, is declared to be the separate property of his wife. His trusteeship was abolished, and all his right and title was thereby terminated. The equitable and legal title was merged in Mrs. Untreiner. He had no rights in the property growing out of his relation of husband; and the incidents thereto fell with the abrogation of such relation as to the property, except that his assent or concurrence is necessary to a valid alienation, which is provided not for the purpose of passing any interest or title from him, but as a salutary restraint upon the wife's power of alienation. This is manifest from the provision in the same section, that the wife may alienate her lands as if she were a *feme sole*, if her husband be a *non compos mentis*, or has abandoned her, or is a non-resident of the State, or is imprisoned under a conviction for crime for a period exceeding two years. In this case, the *lis pendens* began from the service of process upon Mrs. Untreiner.

It is insisted that the doctrine of *lis pendens*, on account of its harshness, should be confined within narrow limits. Its harshness has been frequently acknowledged by learned jurists, and that it does operate harshly in particular cases must be admitted, which fact disposes the courts to give the purchaser the benefit of all technical objections to the regularity of the proceedings in the suit. But the doctrine has been long established in equity jurisprudence as founded on public necessity, and firmly adhered to as essential to the due administration of justice, and to give effect to the decrees of the courts. Considerations of harshness in individual cases do not require that it shall be confined within such narrow

limits as to constitute a purchase, completed *pendente lite*, the acquisition of an interest before the commencement of the suit, by relation to a *void* contract, a baseless claim without color of right or interest.

Affirmed.