CHESTER A. MARR v. SADIE ETHEL BRADLEY.[1]

June 26, 1953.

No. 36,032.

---

[1]Reported in 59 N. W. (2d) 331.

*Daniel F. Foley,* for appellant.
*Philip Neville,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for a new trial.

On March 31, 1945, Agnes R. Sheff owned and, with her husband, occupied as their homestead lots 1 and 2 of block 7, Baker's Second Addition to Minneapolis. On that date, Chester A. Marr, plaintiff herein, through J. G. Goodspeed, who was associated with Nickels & Smith Company, agents of the Sheffs, made an offer to purchase the property for $6,200, of which $100 was paid down, and executed an instrument reading as follows:

"$100.00                                                    3-31-1945

"Received of Chester A. Marr One Hundred Dollars as a guarantee of good faith accompanying offer of $6200 on terms as follows:

"Cash on or before April 15, 1945, for the purchase of 3106-2d Ave. So. property with two lots.

"This offer is subject owner's approval; if accepted, the above amount will apply as a part of purchase price and if refused the above amount will be refunded. If offer is accepted and purchaser refuses to fulfill the above stated condition the $——— will be forfeited to———————

"I hereby make this offer
    "Chester A. Marr
        "Purchaser
"I hereby accept this offer
    "Frank Sheff
    "Agnes R. Sheff
        "Seller

                              "Nickels & Smith Co.
                                    "Agents
                              "By J. G. Goodspeed"

On April 13, 1945, Willard O. Bradley and Sadie Ethel Bradley, his wife, went to the premises involved, then occupied by Mr. and Mrs. Sheff. While there they made a down payment of $100 on the purchase of the premises, and another agreement was drawn up and signed by Frank M. Sheff, which reads as follows:

"April 13-1945

"Received from W. O. Bradley One hundred dollars ($100.00) as down payment on property located at 3106-2d Ave. So., Mpls.

"Consisting of house 2 lots & Furniture with exception of your list. Deposit to be returned after Monday April 16-1945 if pending deal should be closed by Monday, Apr. 16, 1945.

"Said price of property including mentioned furniture and mower, hose etc. to be $6500.

"Frank M. Sheff"

At a time not disclosed by the record, Marr asked Goodspeed about "a deed" and was informed that the Sheffs declined to consummate the deal. Thereafter, on April 19, 1945, Marr commenced an action against Mr. and Mrs. Sheff for specific performance of the agreement. On that date a notice of *lis pendens,* setting forth the claims of Marr, was recorded in the office of the register of deeds of Hennepin county.

Sometime after April 13 and before May 14, 1945, the exact date does not appear from the record, an abstract of title to the property, continued to April 16, was furnished to the Bradleys by the Sheffs. The Bradleys had it examined by an attorney who assured them that the title "was all right." On May 14, 1945, without having the abstract further continued to date, the Bradleys paid the Sheffs the balance of $6,400, and both Mr. and Mrs. Sheff executed a warranty deed to the Bradleys covering the premises. On May 25, 1945, the Bradleys took possession of the property and have remained in possession since that date. It is conceded that, had the abstract been continued at any time after April 19, it would have disclosed Marr's notice of *lis pendens.*

Sometime during the spring of 1946, Marr called at the premises looking for the Sheffs and found the Bradleys in possession of the

property. On his first call he talked to Mrs. Bradley and did not make any claim to an interest in the property. About two weeks later he again called and then informed the Bradleys that he claimed an interest in the property. He suggested that they sell it and divide the profits. Bradley declined to do so. Marr thereafter made two unsuccessful attempts to join them in his pending action against Mr. and Mrs. Sheff. He thereafter commenced the present action to compel Sadie Ethel Bradley to convey to him and sought to have the two actions consolidated for trial. This attempt was successfully opposed. In October 1950, the action against the Sheffs was brought on for trial. Mr. Sheff had died in the meantime, and the action proceeded against Mrs. Sheff. Findings were made in favor of Marr decreeing specific performance. The present action then came on for trial. Mr. Bradley had died in 1948, and Mrs. Bradley, as surviving joint tenant, claimed to be the sole owner of the property. The court found in favor of plaintiff. Motions in the alternative for amended findings or a new trial were denied, and this appeal is from such order.

The trial court based its decision on the finding that, at the time Mr. and Mrs. Bradley entered into a contract to purchase the property involved, they had such actual notice of outstanding rights of Marr as to put them on inquiry to determine the nature and extent of such interest and also on the finding that, at the time the Bradleys purchased the property, they had constructive notice of Marr's interest by virtue of the recorded notice of *lis pendens* in the action brought by Marr against Mr. and Mrs. Sheff. If either finding is correct, the decision must stand.

It is apparent that neither the original agreement between Marr and Mr. and Mrs. Sheff nor the original agreement between the Bradleys and the Sheffs could be recorded for the reason that they were not executed in conformity with M. S. A. 507.25.

█ The determination of whether the Bradleys had constructive notice of the interest of plaintiff when they purchased the property depends upon the validity of the original agreement which they executed with Sheff. It is the contention of plaintiff, and the trial

court so held, that this agreement was void and that the Bradleys acquired no rights under it. Defendant contends that, while it may have been unenforceable by the Bradleys, its invalidity may not be attacked by plaintiff and that, when Mr. and Mrs. Sheff executed the deed to the Bradleys, they both adopted and ratified the original contract and it then became binding.

At the outset, it must be kept in mind that the property appeared of record in the name of Agnes R. Sheff. She and her husband occupied the premises as their homestead. The original agreement procured by the Bradleys was signed only by Frank M. Sheff. These facts are not disputed.

M. S. A. 507.02, as far as here material, reads:

"If the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or other alienation thereof shall be valid without the signatures of both husband and wife."

Without the wife's signature, the contract to convey the homestead was void. In Weitzner v. Thingstad, 55 Minn. 244, 247, 56 N. W. 817, speaking through Mr. Justice Mitchell, we said:

"This court has repeatedly said that conveyances and contracts to convey the homestead, executed by the husband without his wife joining therein, are not merely voidable, but wholly void. * * *

"* * * We think that on legal principles such a contract must be held void for all purposes, and not to constitute the basis of any action against the obligor."

See, also, Horseth v. Fuglesteen, 165 Minn. 38, 205 N. W. 607; Sherwood v. Rosenstein, 179 Minn. 42, 228 N. W. 339.

Nor can it be held that Frank M. Sheff acted as the agent of his wife. M. S. A. 519.06 provides:

"No contract between husband and wife relative to the real estate of either, or any interest therein, nor any power of attorney or other authority from the one to the other to convey real estate, or any interest therein, shall be valid; * * *."

Defendant contends that, even though the contract was void when executed, under our decision in Lennartz v. Montgomery, 138 Minn. 170, 164 N. W. 899, when the husband and wife joined in the conveyance of the property the contract which had been void became a valid agreement. In that case, Mrs. Lennartz entered into a written contract with defendant on September 5, 1916, for the sale of their homestead. The husband did not sign the contract. On September 23, defendant informed Mrs. Lennartz that he would not take the premises and demanded the return of the down payment which he had made. On October 2, the sellers tendered defendant a contract for deed signed by the husband and wife. Defendant contended that the contract was void. In holding[2] that defendant buyer could not defeat the contract, we said (138 Minn. 173, 164 N. W. 900) :

"* * * the protection intended thereby inures to the owners of the homestead only. It was not intended for the protection of the purchaser, or to enable him to repudiate a contract which he had fairly entered into, so long as the owners of the homestead are ready and willing to carry out the same on their part.

"In the present case the wife signed an instrument for the sale of the homestead; her husband did not sign, but thereafter he confirmed her act by offering performance thereof; neither has ever refused to perform the same, both have at all times been ready, willing and able to convey the premises according to the terms of the contract, and to keep and perform the conditions of the agreement, and have offered so to do. There is no issue between the parties as to these matters. We can see no reason why defendant should not keep his agreement."

This case does not hold that the buyer had acquired any rights or interest in the land under the contract prior to the adoption of the contract by the spouse who did not sign. The cases are clear that the buyer could not enforce specific performance; he could not maintain an action for damages against the signer of the contract.

---

[2] See dissent of Mr. Justice Holt and Mr. Chief Justice Brown.

In Barton v. Drake, 21 Minn. 299, the property involved ceased to be a homestead after the execution of the contract to sell had been signed by the husband but not by the wife. The buyer, in an action for specific performance, contended that thereafter the contract became enforceable. In rejecting this contention, we said (21 Minn. 305):

"The 45 1-2 acres being a homestead when the contract was made, and the contract * * * being * * * void, the defendant acquired by them no title to, or estate in, or lien upon, such homestead; * * *."

It must follow that under our decisions the contract to convey a homestead executed by one spouse but not joined in by the other is wholly void and that the buyer acquires no rights under it whatsoever. Until it is adopted or confirmed by the spouse not signing, it has no validity for any purpose. That being the case, the Bradleys acquired no rights to the property until they received a deed from Mr. and Mrs. Sheff on May 14, 1945. At that time Marr's notice of *lis pendens* had been duly recorded and carried with it constructive notice of his rights. The mere fact that the Bradleys failed to have their abstract completed or the record title examined at that time cannot affect the then vested rights of the parties. M. S. A. 557.02, as far as here material, reads:

"In all actions in which the title to, or any interest in or lien upon, real property is involved or affected, or is brought in question by either party, any party thereto, at the time of filing the complaint, or at any time thereafter during the pendency of such action, may file for record with the register of deeds of each county in which any part of the premises lies a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property in such county involved, affected or brought in question thereby. *From the time of the filing of such notice*, and from such time only, the pendency of the action shall be notice to purchasers and encumbrancers of the rights and equities of the party filing the same to the premises." (Italics supplied.)

It is clear that under this statutory provision defendant was chargeable with notice of plaintiff's claim from the time of the filing for record of the notice of *lis pendens* and cannot claim ignorance thereof by virtue of the examination of an abstract which did not show such recording for the reason that the abstract had not been continued down to date.

2. Before a right or interest acquired prior to the filing of a notice of *lis pendens* may be effectual, it must be an enforceable right. In Rooney v. Michael & Lyons, 84 Ala. 585, 590, 4 So. 421, 423, the Alabama court said:

"* * * Her [the wife] mere agreement to sell her real estate, without the consent or concurrence of her husband, expressed in writing, is void under the statutes, and a court of equity will not enforce it against her; and her conveyance, without the consent or concurrence of the husband, shown in the mode prescribed, will not operate as a contract to convey. * * * Wherefore, the agreement to sell prior to the commencement of the suit was not a valid and enforceable contract, and passed no right or interest to the purchasers. There was no alienation of the lands, or of any interest therein, until the deed was signed by the husband of Mrs. Untreiner and delivered to the grantee. This was after the filing of the bill, and service of process upon Mrs. Untreiner."

See, also, Lightle v. Schmidt, 144 Ark. 304, 222 S. W. 46; 54 C. J. S., Lis Pendens, § 44.

■ One who purchases real property from a party after a notice of *lis pendens* is properly filed for record takes subject to the final disposition of the pending cause and is bound by the decision which may be entered against the party from whom he derives his title, even though he is not a party to such action. West Virginia Pulp & Paper Co. v. Cooper, 87 W. Va. 781, 106 S. E. 55; 34 Am. Jur., Lis Pendens, § 2, and cases cited under note 15; see, Moulton v. Kolodzik, 97 Minn. 423, 107 N. W. 154.

It follows that the original contract between Frank M. Sheff and the Bradleys was void and vested in the purported purchasers no enforceable right, title, or interest in the land; that before they

acquired any such right, title, or interest the notice of *lis pendens* in the action brought by Marr against the Sheffs had been duly recorded; and that defendant is bound by the decision in that action. Consequently the decision of the trial court must be affirmed.

It is contended that the Bradleys have invested large sums of money in the improvement of the premises and that it would be inequitable to now compel them to convey to plaintiff. There are two answers to this contention. In the first place, they made such improvements after they had constructive notice of plaintiff's claims and did so, at least as far as their legal rights are concerned, taking the chance that plaintiff might be determined to have rights superior to theirs, and secondly, the court undoubtedly can adjust such rights in an action for an accounting between the parties, part of the premises having been rented during the pendency of the action.

In view of our decision above, we need not pass upon the claim of actual notice or other errors assigned.

Affirmed.

