Martin H. GORES, et al., Respondents,

v.

Joshua SCHULTZ, et al., Defendants,

JP Morgan Chase Bank,
et al., Appellants.

No. A09–187.

Court of Appeals of Minnesota.

Dec. 29, 2009.

Phillip R. Krass, Benjamin J. Court, Krass Monroe, P.A., Minneapolis, MN, for respondents.

Michael J. Orme, Dana K. Nyquist, Orme & Associates, Ltd., Eagan, MN, for appellants.

Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and LARKIN, Judge.

## OPINION

MINGE, Judge.

Appellants, mortgagees of a homestead, claim that (1) because co-owner wife did not sign respondent mortgagees' prior recorded mortgage on the same homestead, respondents' mortgage is void; and (2) the district court erred in dismissing appellants' voidness claim and claim for equitable subrogation. Because we conclude that appellants can raise the issue of voidness and that respondents' mortgage is void for lack of the wife's signature under Minn.Stat. § 507.02 (2008), we reverse.

## FACTS

This case arises out of a dispute between holders of mortgages on a residential property (Property). The Property had been owned by David and Rachel Norling. Norlings agreed to sell the Property to Joshua and Cody Schultz on a contract for deed with $100,000 to be paid at closing. Respondent Mary Gores, the realtor representing the Schultzes, offered to loan them $100,000 to finance the cash-at-closing payment provided that her loan was secured by a mortgage.

On July 18, 2005, the Schultzes purchased the Property and used it as their homestead. At the closing, the Schultzes borrowed $135,000 from Mary and her husband co-respondent Martin Gores. Schultzes used $100,000 of the loan proceeds for the down payment and $35,000 for unsecured consumer debt. At the closing, the Schultzes did not provide a mortgage to secure the loan. Instead, Joshua Schultz brought a document pledging all the assets of his business as security. The Goreses reiterated their desire for a real estate mortgage. Joshua said his attorney would draw up a note and mortgage. On July 27, 2005, Joshua delivered to the Goreses a note and mortgage covering two properties owned by his business. Because the business real estate was titled in the name of Joshua's business partner, Duane Jenkins, the mortgage was signed by Jenkins and his wife. The Goreses did not accept the note and mortgage because they did not know the Jenkinses.

Subsequently, Mary Gores had her attorney prepare a note and mortgage for $150,000. The mortgage covered the Property. When she presented these documents to Joshua Schultz, he realized that an extra $15,000 had been added to the loan. Gores explained that the extra money represented a "fee."

Sometime before October 27, 2005, Joshua Schultz returned the executed copies of the $150,000 note and mortgage to the Goreses. Joshua had signed his wife's name on both documents and had the mortgage notarized. The mortgage was not dated. The Goreses filed and recorded the mortgage with the Scott County Recorder's Office on October 27, 2005.

On October 28, 2005, the Schultzes closed on the sale of the Property to a new owner, who financed the purchase with $940,000 in loans from appellants J.P. Morgan Chase Bank and First National Bank of Arizona (collectively, Banks). These loans were secured by two mortgages dated October 28, 2005, in favor of the Banks. The Banks' mortgages were recorded on November 15, 2005. The proceeds of the Banks' loans were used to satisfy mortgages encumbering the Norlings' interest and the balance due them on the contract for deed. The remainder was paid to the Schultzes. The Banks were not aware of the Goreses' mortgage (which had been filed the previous day), no funds were paid to the Goreses, and their mortgage was not satisfied.

By mid–2006, the Goreses' and the Banks' loans were in default. On October 5, 2006, one of the Banks began a foreclosure of its mortgage by advertisement. The Goreses subsequently sued the Schultzes, the Banks, and others to foreclose the Goreses' mortgage by action. The Banks answered, asserting counterclaims against the Goreses challenging the validity and priority of the Goreses' mortgage and making cross-claims against the Schultzes for fraud and misrepresentation.

In an order for partial summary judgment dated August 18, 2008, the district court dismissed the Banks' equitable-subrogation claims against the Goreses and determined that the Goreses' mortgage had priority over the Banks' mortgages because it was recorded first. Prior to trial, the Goreses and Schultzes agreed to dismiss all of their respective claims against each other. The Schultzes filed for bankruptcy on September 29, 2008. A bench trial was held on September 30, 2008, on the claims between the Goreses and the Banks. Although the district court found that the Goreses' mortgage was defective due to the lack of Cody Schultz's signature, it dismissed the Banks' contention that the Goreses' mortgage was invalid, ruling that the Banks could not

challenge the Goreses' mortgage. This appeal follows.

## ISSUES

I.  Did the district court err in concluding that the Banks could not challenge the validity of the Goreses' mortgage under Minn.Stat. § 507.02?

II.  If the Banks can challenge the validity of the Goreses' mortgage, is that mortgage void?

## ANALYSIS

### I.

■ The first issue is whether the Banks, as mortgagees, can assert that the Goreses' mortgage was void under Minn. Stat. § 507.02.[1] Whether a mortgagee can assert that a competing mortgage is void under section 507.02 requires construction of the statute. Construction of a statute is a question of law and our review is de novo. *Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn.2003).

Minn.Stat. § 507.02 provides that "[i]f the owner is married, no conveyance of the homestead, except a mortgage for purchase money under section 507.03 . . . shall be valid without the signatures of both spouses." "The word 'conveyance,' as so used, includes every instrument in writing whereby any interest in real estate is . . .

mortgaged. . . ." Minn.Stat. § 507.01 (2008).

Cody Schultz did not sign the Goreses' mortgage; instead, her husband signed her name. The Banks argue that (1) the district court erroneously determined that the Banks could not assert section 507.02; and (2) the mortgage was void under that section.

The district court concluded that the Banks could not raise the section 507.02 issue because it was a defense that was personal to Cody Schultz as a co-owner of the homestead and as a purported mortgagor and because the Banks as competing mortgagees were not protected by section 507.02 or in privity with Cody Schultz.[2] On appeal, the parties use the legal concept of standing to identify the issue. The district court cited no authority that precluded the Banks from raising the section 507.02 voidness issue.

■ There is nothing in the text of section 507.02 that suggests that it can only be asserted by the non-signing spouse. *See* Minn.Stat. § 507.02. Moreover, as a general rule, those with an interest in real estate have the ability to challenge the validity of competing interests. *See, e.g., Banco Mortgage Co. v. E.G. Miller Enters., Inc.*, 264 N.W.2d 399, 400 (Minn. 1978) (allowing a mortgagee and holders of

---

1.  The Goreses also argue on appeal that section 507.02 is not applicable because the Property was not the homestead of the Schultzes. Because this issue was not raised before the district court, we decline to consider it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (holding that reviewing courts generally will not entertain matters not argued to and considered by the district court). Moreover, the Goreses' amended complaint alleges that the Schultzes were married and resided at the property. Although the homestead question is the subject of conflicting collateral evidence on the record, that evidence was not introduced by the Goreses for the purpose of retracting or dis-

puting their homestead allegation, but is only highlighted by them in an attempt to raise the homestead issue on appeal.

2.  The district court also considered a claim that the Goreses' loan was defective because it was usurious. The district court concluded that usury is a personal defense and that the Banks could not use it to attack the Goreses' mortgage. The district court's consideration of the Banks' ability to attack the Goreses' mortgage under section 507.02 was a continuation of its earlier usury analysis. The usury issue is not raised on appeal.

mechanic's liens to challenge each other's interest in real property).

The Minnesota Supreme Court's decision in *Marr v. Bradley* addresses the ability of parties other than the actual married homeowners to assert section 507.02. 239 Minn. 503, 59 N.W.2d 331 (1953). The reported facts of that case indicate that Joe Marr made a written offer on a house that was accepted and signed by the married homeowners. *Id.* at 504, 59 N.W.2d at 332. A couple of weeks later, the Bradleys made the homeowners a competing offer for more money and another agreement was signed, this time only by husband homeowner. *Id.* at 505, 59 N.W.2d at 332. After Marr learned that the homeowners were backing out of the deal with him, Marr sued the homeowners for specific performance of his purchase agreement, recorded a notice of *lis pendens,* and sued the Bradleys contesting their right to the property. *Id.* at 505–06, 59 N.W.2d at 332–33.

Marr contended that the Bradleys' purchase agreement violated Minn.Stat. § 507.02 [3] and was void from its inception because it was only signed by the husband. *Id.* at 506–07, 59 N.W.2d at 333. As a part of their defense, the Bradleys argued that Marr could not challenge their purchase agreement under section 507.02. *Id.* The supreme court rejected this argument. *Id.* at 507–09, 59 N.W.2d at 333–34. In reviewing the precedent construing precursors to section 507.02, the *Marr* court stated:

> It must follow that under our decisions the contract to convey a homestead executed by one spouse but not joined in by the other is wholly void and that the buyer acquires no rights under it whatsoever. Until it is adopted or confirmed by the spouse not signing, it has no validity for any purpose.

*Id.* at 509, 59 N.W.2d at 334. *Marr* held that a conveyance that violates section 507.02 is (1) void unless and until the nonsigning spouse adopts or confirms the conveyance; and (2) that persons other than the homeowners have standing to assert that a conveyance is void under section 507.02.

The Goreses argue that the purpose of section 507.02 is to protect the nonsigning homeowner against alienation of the homestead without his or her consent and that this policy is not served by finding their mortgage void under section 507.02. The Goreses' argument is inconsistent with the *Marr* ruling. *Marr* was able to challenge a competing claim to property he wished to buy. Similarly, the Banks need not establish that they have privity with or standing to assert the rights of the Schultzes as homeowners.[4] We conclude that Minn.Stat. § 507.02 is not a personal defense requiring privity and that the Banks have standing to challenge the validity of the Goreses' mortgage.

## II.

The next issue is whether the Goreses' mortgage is void under Minn.Stat. § 507.02. Applying a statute to the facts found is a question of law that we review de novo. *State v. Sopko,* 770 N.W.2d 543, 544 (Minn.App.2009); *see O'Malley v. Ulland Bros.,* 549 N.W.2d 889, 892 (Minn.

---

**3.** Since the *Marr* decision, the language of the statute has not been changed relevant to our decision. *Compare* Minn.Stat. § 507.02 (1953) *with* Minn.Stat. § 507.02 (2008).

**4.** Goreses ask that we consider the decision of *Lennartz v. Montgomery,* 138 Minn. 170, 164

N.W. 899 (1917). But *Marr* was decided after and distinguished *Lennartz* as treating a conveyance as void unless confirmed by the nonsigning spouse. *Marr,* 239 Minn. at 507–08, 59 N.W.2d at 333–34.

1996) (stating that the application of a statute to undisputed facts is a question of law).

■ The previously quoted language in *Marr* holds that the conveyance of homestead property that is not signed by both home-owning spouses is void under section 507.02 unless an exception to that statute applies. *Marr*, 239 Minn. at 509, 59 N.W.2d at 334. The supreme court has adhered to this interpretation of section 507.02: We have held many times that without the signatures of both spouses a conveyance of homestead property is not merely voidable but is void and the buyer acquires no rights whatsoever. *Dvorak v. Maring*, 285 N.W.2d 675, 677 (Minn.1979).

Because Cody did not sign the Goreses mortgage, that mortgage is void unless the Goreses can demonstrate that an exception to section 507.02 applies. The Goreses argue that their mortgage is not void for three reasons: (1) *Marr* is distinguishable because Goreses mortgage contained two signatures; (2) Cody consented to the mortgage and ratified it through her conduct; and (3) the exception for purchase-money mortgages in section 507.02 applies. We address each argument in turn.

## A. Apparent Compliance

■ The Goreses contend that *Marr* is distinguishable from this case because in *Marr* it was undisputed that the signature of only one spouse appeared on the conveyance, putting the Bradleys as competing purchasers on notice that their purchase agreement was defective. The Goreses argue that, by contrast, because Joshua Schultz signed for his wife, the mortgage and promissory note contained two signatures. If only one signature had appeared on the documents, the Goreses

argue they would have been able to protect themselves by having the documents properly executed. Thus, they argue that the fraudulent acts of Joshua should not render void the security interests of innocent lenders such as themselves.

The Goreses cite no legal basis for the proposition that lack of knowledge by the lenders prevents the mortgage from being void under section 507.02. Indeed, we cannot identify any legal principle that upholds a forged signature to a document because another party innocently relies on what appears to be a valid signature. The general rule is that forgery renders an instrument void. 23 Am. Jur. 2d *Deeds* § 164 (2002). Regardless, the district court did not find that the Goreses were unaware that Joshua Schultz signed for his wife, and the record is mixed. Although Mary Gores testified that she did not know Joshua signed for his wife, Joshua testified in his deposition that he signed both his own signature and his wife's to the promissory note in front of the Goreses.[5]

## B. Consent/Ratification

■ The Goreses next argue that their mortgage is not void under section 507.02 because Cody Schultz consented to the mortgage and ratified it through her conduct. The *Marr* decision recognizes that the validity of a document conveying an interest in real property that is signed by only one spouse can be established by adoption or ratification by the other spouse. 239 Minn. at 509, 59 N.W.2d at 334. The Goreses first made a consent-based argument in their posttrial motion, where they asserted that portions of Cody's deposition testimony demonstrate that she consented to Joshua signing the mortgage for her.[6] However, the district

---

5. Joshua's deposition testimony was admitted into evidence and is part of the record.

6. Cody Schultz did not testify at trial. The only testimony in the record is from Mary and

court did not consider this evidence and argument because Cody Schultz's deposition was not part of the trial record. To circumvent this obstacle, the Goreses argue that there was no need for Cody's testimony because the Banks did not argue that the mortgage was void under section 507.02 until their posttrial motion. This argument is without merit, however, because the Banks brought up section 507.02 during trial. Indeed, in their opening statements at trial, the Banks claimed that the Goreses' mortgage was void under section 507.02 because Cody Schultz did not sign it. Thus, the Goreses' ratification/consent arguments are not only late, but as issues not addressed by the district court, are procedurally barred under *Thiele.* 425 N.W.2d at 582. Regardless, because there was no evidence of consent or ratification in the record, we conclude there is no basis for that exception to the voidness of the Goreses' mortgage.[7]

### C. Purchase–Money Mortgage

■ Although a mortgage that is not signed by both husband and wife is generally void under section 507.02, an exception is made for a purchase-money mortgage: "If the owner is married, no conveyance of the homestead, *except a mortgage for purchase money* . . . shall be valid without the signatures of both spouses." Minn.Stat. § 507.02 (emphasis added). A purchase-money mortgage is a mortgage where "any portion of the money secured by the mortgage is used for the payment of the purchase price of the real property or any portion of it." Minn.Stat. § 507.03 (2008); *accord Wells Fargo Home Mortgage, Inc. v. Newton,* 646 N.W.2d 888, 893 (Minn. App.2002). The Goreses contend that since a portion of their loan secured by the mortgage was used by the Schultzes to purchase the Property, the Goreses have a purchase-money mortgage that is not void under section 507.02.

■ For a mortgage to be a purchase-money mortgage, the mortgage and deed of purchase do not need to be executed on the same day, but they both must be "part[ ] of one continuous transaction, and so intended to be, so that the two instruments should be given contemporaneous operation in order to promote the intent of the parties." *Stewart v. Smith,* 36 Minn. 82, 84, 30 N.W. 430, 431–32 (1886). Even when the mortgage is executed after the deed of purchase, if the mortgage is executed according to an agreement reached prior to the purchase, both instruments are part of one continuous transaction, and the mortgage may be a purchase-money mortgage. *Id.* at 432. In *Smith,* a mortgage was found to be a purchase-money mortgage even though it was executed several days after the Property was purchased because the buyer and lender agreed before purchase that the buyer would give the lender a mortgage against the Property to secure the loan. *Id.*

Here, the mortgage was executed after the purchase and there was no agreement

---

Martin Gores and Joshua Schultz, through his deposition testimony. Moreover, Joshua also testified that his wife was extremely unhappy that he had signed these documents, which makes it speculative that Cody would ratify the mortgage if she had been requested to do so.

7. Although the district court did not reject the Goreses' consent/ratification argument because it was first made posttrial, we note that

the district court could have done so. *See Antonson v. Ekvall,* 289 Minn. 536, 538–39, 186 N.W.2d 187, 189 (1971) (rejecting an argument as too late when raised for the first time in posttrial motion); *Minn. Mut. Fire & Cas. Co. v. Retrum,* 456 N.W.2d 719, 723 (Minn.App.1990) (stating that the district court does not abuse its discretion when it denies posttrial motions relying on theory of recovery not previously raised).

before or at the July 18, 2005 closing that the Goreses would receive a mortgage against the Property itself. Mary Gores testified that after the closing, she and Joshua Schultz agreed that the mortgage should be on the Property. As the summary of facts at the outset of this opinion states, between the closing and this agreement, Joshua Schultz offered the Goreses a note and mortgages for $135,000 for two properties owned by his business that were signed by Duane Jenkins, his wife, and Joshua. Duane Jenkins was Joshua's business partner. The Goreses rejected the note and mortgages because they did not know the Jenkinses. The execution of the Goreses' mortgage and the Schultz purchase were not part of one continuous transaction, and thus, the Goreses' mortgage is not a purchase-money mortgage.[8]

Because the mortgage does not fall within an exception to Minn.Stat. § 507.02, it is void. Because the Goreses' mortgage is void, there is no need to reach the issue of whether the Banks are entitled to priority by equitable subrogation.

### DECISION

Because parties other than nonsigning spouses may challenge a mortgage under Minn.Stat. § 507.02 (2008), because appellant Banks have successfully done so here, and because the mortgage at issue here does not fall into an exception to section 507.02, we reverse the district court's decision that the Banks could not challenge the Goreses' mortgage under section 507.02

and conclude that the mortgage is void under that statute.

**Reversed.**

---

8. We also note that the statute could be read to the effect that the purchase-money-mortgage exception to the spousal-signature requirement is limited to circumstances in which the homestead is only held in the name of the signing spouse. *See* Minn.Stat. § 507.02 ("if the *owner* is married . . . .") (emphasis added). Here, the Schultzes were married and purchased the property in both their names. Thus, it appears that on this record there could be an independent basis to conclude that the purchase-money-mortgage exception is not applicable. But because that question is not before us, we do not address it.