# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A23-0598

First & First, LLC, a Minnesota limited liability company, et al.,
Appellants,

vs.

Chadco of Duluth, LLC, a Minnesota limited liability company,
Respondent.

**Filed December 11, 2023**
**Affirmed**
**Frisch, Judge**

St. Louis County District Court
File No. 69DU-CV-23-747

Ryan R. Dreyer, Eric G. Nasstrom, Morrison Sund PLLC, Minnetonka, Minnesota (for appellants)

James R. Magnuson, MJB Law Firm, PLLC, Chanhassen, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Frisch, Judge; and Kirk, Judge.[*]

## SYLLABUS

A party seeking a temporary injunction to suspend cancellation of a purchase agreement for real property must demonstrate irreparable harm under the *Dahlberg* factors.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**FRISCH**, Judge

In this action for breach of contract related to a failed real estate transaction, appellants-purchasers appeal the district court's denial of a motion seeking temporary injunctive relief to enjoin the cancellation of and to enforce the parties' purchase agreement, arguing that the district court misapplied the law in determining that appellants-purchasers failed to establish irreparable harm. Because we see no abuse of discretion by the district court, we affirm.

**FACTS**

Appellant First & First, LLC contracted with respondent Chadco of Duluth, LLC to purchase real property in Duluth commonly known as the Spirit Valley Mall (the property).[1] The parties entered into a purchase and sale agreement effective August 2022. The parties amended the purchase agreement several times. The fifth amendment, dated December 22, 2022, is the subject of this appeal. In the fifth amendment, the parties set a closing date of January 30, 2023.

The parties did not close on January 30, 2023. First & First asserts on appeal that the parties did not close because Chadco failed to deliver various closing documents and that Chadco could not comply with its contractual obligations because title to the property was in doubt. Chadco asserts on appeal that First & First waived its title objection because

---

[1] First & First assigned its rights in the purchase agreement to appellant Grand Central Duluth, LLC, which is also a party to this case. For consistency with the briefing in this case and clarity, we refer to the buyer of the property as First & First.

it did not provide a written objection by the amended contingency date, as required by the purchase agreement. Chadco also asserts that the parties did not close because First & First had not secured financing.

The parties continued to communicate about the transaction after the agreed-upon closing date. But about one month after the closing date, Chadco's broker emailed First & First relaying that "all parties to this transaction are no longer under contract, our Purchase Agreement and extensions have expired," and Chadco would "go no further." Later that day, an individual later identified as Chadco's counsel emailed First & First's counsel, inquiring about outstanding title-survey work and a timeline for closing. On March 9, Chadco sent First & First a notice of default, stating that First & First had defaulted by not closing on January 30. On March 23, Chadco sent First & First a notice of cancellation of purchase agreement.

On April 17, First & First filed a complaint in district court, alleging that Chadco breached the purchase agreement because Chadco failed to supply closing documents to First & First by January 30. First & First also alleged that Chadco was not entitled to initiate a statutory cancellation. First & First sought, in pertinent part, (1) a judgment for specific performance of the purchase agreement, and (2) a declaration of the parties' rights and obligations regarding the purchase agreement and Chadco's statutory cancellation of the purchase agreement under Minn. Stat. §§ 555.01-.16 (2022). First & First also moved for temporary injunctive relief to enjoin statutory cancellation of the purchase agreement.

The district court heard First & First's motion for temporary injunctive relief, and counsel for both parties appeared at the hearing. The district court denied the motion, and First & First appeals.

## ISSUE

Did the district court abuse its discretion by denying the motion for a temporary injunction?

## ANALYSIS

First & First argues that the district court misapplied the law in denying its motion for a temporary injunction. It specifically argues that the district court was obligated under Minnesota law to presume the existence of irreparable harm because this matter involves a dispute over real property, and First & First seeks specific performance. We disagree.

We begin by describing the statutory authority related to First & First's underlying claims. The termination of a contract for the conveyance of real estate is governed by Minn. Stat. § 559.21 (2022). *See also* Minn. Stat. § 559.217 (2022) (governing cancellation of residential purchase agreements). Under section 559.21, a seller of real estate may terminate a purchase agreement upon 30 days' notice of a purchaser's default. Minn. Stat. § 559.21, subds. 2a, 4. If the default is not cured within 30 days (or if the purchaser does not satisfy certain other statutory requirements), the purchase agreement terminates. *Id.* But a party facing statutory cancellation of a contract for the conveyance of real estate may bring an action in district court alleging an affirmative defense to termination and requesting an order temporarily restraining or enjoining termination of the contract subject to the requirements of Minn. R. Civ. P. 65. Minn. Stat. § 559.211, subd. 1

4

(2022). A district court may grant a temporary injunction if, upon review of any affidavits, deposition testimony, or oral testimony presented to the court, it determines that there are sufficient grounds to warrant such relief. Minn. R. Civ. P. 65.02(b).

We next describe well-settled Minnesota law governing injunctive relief. The propriety of injunctive relief is a decision that "rests within the sound discretion of the [district] court, and its action will not be disturbed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 91 (Minn. 1979). A district court abuses its discretion if it bases its decision to grant injunctive relief on an erroneous interpretation of the law or if it disregards facts. *DSCC v. Simon*, 950 N.W.2d 280, 286 (Minn. 2020); *Cramond v. Am. Fed'n of Lab. & Cong. of Indus. Orgs.*, 126 N.W.2d 252, 256-57 (Minn. 1964). On appeal, the party challenging a district court's decision on a request for injunctive relief bears the burden to show that the district court abused its discretion. *See Bud Johnson Constr. Co. v. Metro. Transit Comm'n*, 272 N.W.2d 31, 33 (Minn. 1978).

Because a temporary injunction provides relief before a trial on the merits, the party seeking an injunction must show that it would be irreparably harmed before an injunction may issue. *DSCC*, 950 N.W.2d at 286. We "consider five factors in reviewing the district court's irreparable harm determination." *Id.* The five factors, known as the *Dahlberg* factors, are:

> (1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

5

(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Id.* at 286-87 (quoting *Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314, 321-22 (Minn. 1965)). In conducting our review, we view the facts in the light most favorable to the prevailing party. *Bud Johnson Constr.*, 272 N.W.2d at 33. Against this backdrop, we now consider First & First's challenge to the district court's denial of temporary injunctive relief.

First & First primarily argues that, notwithstanding the five *Dahlberg* factors, the district court was obligated under Minnesota law to presume the existence of irreparable harm because this dispute involves the purchase of real property, and damage to a party's rights in real property is not, by its nature, compensable by money damages. Stated differently, First & First argues that it met its burden to show irreparable harm by its very allegations, divesting the district court of its discretion to determine irreparable harm in cases involving alleged damage to rights in real property. This argument finds no support in Minnesota law.

6

Our assessment of irreparable harm does not change solely because First & First has asserted damage to its right to purchase real property and seeks specific performance as a remedy. Although First & First points to Minnesota authority acknowledging that monetary damages can be an inadequate remedy in disputes regarding a contract for purchase of real property, that authority involves the *availability* of a specific-performance remedy and does not stand for or support the proposition that a *presumption* of irreparable harm exists in such disputes when one party seeks injunctive relief. *Shaughnessy v. Eidsmo*, 23 N.W.2d 362, 368 (Minn. 1946) (reasoning that in a dispute regarding an interest in land, monetary damages are presumed to be inadequate); *Schumacher v. Ihrke*, 469 N.W.2d 329, 335 (Minn. App. 1991) (holding that the district court acted within its discretion in awarding specific performance even where other remedies would be adequate). First & First does not cite to any authority supporting the proposition that a district court is ever divested of its discretion in assessing irreparable harm when determining the propriety of temporary injunctive relief, and we are aware of none.[2] To the contrary, when considering a motion for temporary injunctive relief in matters

---

[2] First & First also cites two cases from foreign jurisdictions, but neither supports its position. *Campbell v. Weyehaeuser* contemplates irreparable injury outside of the context of injunctive relief. 161 F. 332, 333 (8th Cir. 1908). In *Mitchell v. Century 21 Rustic Realty*, the district court denied a temporary injunction to enjoin the sale of a disputed property. 233 F. Supp. 2d 418, 439 (E.D.N.Y. 2002). Although the district court determined that the parties seeking the injunction demonstrated that they would suffer irreparable harm from an improper sale of the property, it expressly stated that "[l]oss of an interest in real property is generally considered irreparable harm. Loss of an interest in real property is *not presumed* to be irreparable harm however." *Id.* at 431 (emphasis added) (citations omitted).

7

involving real property, Minnesota courts have consistently evaluated the factual circumstances of each case using the *Dahlberg* factors to determine if a moving party has demonstrated irreparable harm.[3]  And a district court errs when it fails to analyze the *Dahlberg* factors in considering a motion for a temporary injunction.  *In re Est. of Nelson*, 936 N.W.2d 897, 910 (Minn. App. 2019).  We therefore hold that a party seeking a temporary injunction to suspend cancellation of a purchase agreement for real property must demonstrate irreparable harm under the *Dahlberg* factors.

First & First argues that the district court otherwise abused its discretion in applying the *Dahlberg* factors.  We consider each factor in turn.

### *Nature of the Parties' Relationship*

Under the first *Dahlberg* factor, we consider "[t]he nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief." *Dahlberg*, 137 N.W.2d at 321.  The district court found that "the relationship between the parties is that of two relatively equal business entities" with "no imbalance in the relationship that would favor granting or denying the motion."  First & First does not

---

[3] *See, e.g.*, *Hansen v. Cottage Homesteads of Am., Inc.*, No. A05-1704, 2006 WL 923743, at *3-4 (Minn. App. Apr. 11, 2006) (affirming the district court's *Dahlberg*-factor analysis and denial of temporary injunctive relief); *Carlson v. Bloomington Hous. Partners II*, No. A05-1324, 2006 WL 1073194, at *3-5 (Minn. App. Apr. 25, 2006) (same); *Vang v. Hamline Ct., LLC*, No. A13-0878, 2014 WL 801795, at *3-6 (Minn. App. Mar. 3, 2014) (same); *Schneider v. Oestreich*, No. A18-0232, 2018 WL 4289394, at *3-5 (Minn. App. Sept. 10, 2018) (same); *see also Helgeson v. Franklin*, No. A07-1489, 2008 WL 2885882, at *1-2 (Minn. App. July 29, 2008) (affirming the district court's *Dahlberg*-factor analysis and grant of temporary injunctive relief); *Stangel v. Whipple*, No. A22-1318, 2023 WL 5200586, at *2-7 (Minn. App. Aug. 14, 2023) (same).  We cite nonprecedential opinions for their persuasive authority.  Minn. R. Civ. App. P. 136.01, subd. 1(c).

challenge this factual finding and instead argues that the district court abused its discretion when it did not weigh this factor in favor of granting injunctive relief. We disagree. The record shows that First & First and Chadco are both commercial entities engaged in an arms-length transaction for sale of the property. Because the district court's reasoning is supported by the record, we discern no abuse of discretion in the district court's determination that the parties' relationship does not favor granting injunctive relief. *Cf. id.* at 322 (noting a franchisee's long-standing, specialized, and public relationship with a franchisor and affirming the district court's grant of a temporary injunction).

### Balance of Harm

The second *Dahlberg* factor considers "[t]he harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial." *Id.* at 321. The party seeking injunctive relief bears the burden to establish such harm. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 110 N.W.2d 348, 351 (Minn. 1961) ("The burden of proof rests upon the complainant to establish the material allegations entitling him to relief.").

The district court found that First & First would not suffer harm in the absence of an injunction. Although First & First argued to the district court that, without injunctive relief, it would "lose its right to purchase the Subject Property," rendering it unable to obtain specific performance under the purchase agreement should it prevail on the merits, the district court rejected that argument because a notice of lis pendens on the property preserved First & First's rights and equities with respect to the property. We agree. *See Marr v. Bradley*, 59 N.W.2d 331, 335 (Minn. 1953) (explaining that after a party properly

9

files and records a notice of lis pendens affecting real property, a purchaser of the property takes it "subject to the final disposition of the pending cause and is bound by the decision which may be entered against the party from whom he derives his title, even though he is not a party to such action"); *see also* Minn. Stat. § 557.02 (2022) (stating that a notice of lis pendens provides "notice to purchasers and encumbrancers of the rights and equities of the party filing the same to the premises").

At oral argument before this court, First & First made clear that it does not challenge on appeal the district court's factual finding that a notice of lis pendens exists, nor does it argue that the notice of lis pendens provides no protection for its ability to take title to the property in the event it prevails on the merits of the underlying action. Instead, it argues that *if* Chadco challenges the notice of lis pendens—which it has not done—and *if* it is successful in that endeavor, First & First will *then* be harmed in its ability to acquire the property. But none of those harms have occurred, First & First has not demonstrated they are likely to occur, and the notice of lis pendens continues to protect First & First from the purported harms it has articulated in support of its motion for injunctive relief. In other words, there is no potential for immediate harm to any property rights held by First & First because the notice of lis pendens preserves the status quo, and therefore, denial of the temporary injunction was not an abuse of discretion. *Indep. Sch. Dist. No. 35 v. Engelstad*, 144 N.W.2d 245, 248 (Minn. 1966) ("[A] temporary injunction . . . will not be granted unless it clearly appears that there is an *immediate prospect* that plaintiff will otherwise suffer an irreparable injury." (emphasis added)). We see no abuse of discretion in the district court's determination of the balance of harms, particularly because it gave due

regard to the fact that First & First adequately protected its legal interest in the property pending resolution on the merits. *See Marr*, 59 N.W.2d at 335.

### *Likelihood of Success on the Merits*

The third *Dahlberg* factor focuses on "[t]he likelihood that one party or the other will prevail on the merits." *Dahlberg*, 137 N.W.2d at 321. The bar for establishing likelihood of success on the merits is low. *Metro. Sports Facilities Comm'n v. Minn. Twins P'ship*, 638 N.W.2d 214, 226 (Minn. App. 2002), *rev. denied* (Minn. Feb. 4, 2002).

The district court concluded that the third *Dahlberg* factor favored neither party because, while Chadco may be responsible for "the holdup on producing marketable title," the "documents" and "course of conduct between these parties suggests that [First & First] should have obtained another amendment to the Purchase Agreement extending the closing date." First & First argues that the district court abused its discretion because it ignored "undisputed evidence" that Chadco breached the purchase agreement by failing to deliver closing documents and failing to hold marketable title to the property. But the district court's evaluation of this factor reflects the record evidence regarding the parties' dispute—the parties disagree about closing obligations and offer conflicting interpretations of certain aspects of the purchase agreement. We discern no abuse of discretion in the district court's assessment about the circumstances surrounding the breakdown of this transaction and its ultimate determination that, on the limited record before the district court, the third *Dahlberg* factor favored neither party.

11

***Public-Policy Considerations***

The fourth *Dahlberg* factor focuses on public-policy considerations associated with injunctive relief. *Dahlberg*, 137 N.W.2d at 321-22. The district court has broad discretion to consider public-interest considerations that may provide guidance as to whether injunctive relief is appropriate. *See id.* (applying the five factors under an abuse-of-discretion standard). The district court found that, though "the mayor has expressed an interest in redeveloping this site," the public interest in granting injunctive relief to First & First was "minimal." Although First & First alludes to a competing public interest in the enforcement of contracts and preventing windfalls, we discern no abuse of the district court's broad discretion in its consideration of this factor.

***Administrative Burdens***

The fifth *Dahlberg* factor focuses on the administrative burdens involved in judicial supervision and enforcement of a temporary injunction. *Id.* at 322. The district court found that the fifth *Dahlberg* factor was "not a factor." First & First argues that this factor does not "militate against" issuing a temporary injunction, but it offers no authority that the district court abused its discretion in its assessment of its own administrative burden associated with supervision and enforcement of a temporary injunction, and we discern none. *See Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949).

The district court's decision to deny First & First's motion for temporary injunctive relief was based on its overall determination that First & First failed to meet its burden to establish immediate and irreparable harm. It reasoned that, in light of the notice of lis pendens, First & First would suffer no immediate harm in the absence of an injunction,

and First & First retained the ability to obtain specific performance should it ultimately prevail on the merits. The district court considered the remaining *Dahlberg* factors and determined that injunctive relief was not warranted. We cannot say that the district court abused its discretion in making this ultimate determination. We therefore decline to reverse the district court's decision to deny First & First's motion for a temporary injunction.

## DECISION

We hold that a party seeking a temporary injunction to suspend cancellation of a purchase agreement for real property must demonstrate irreparable harm under the *Dahlberg* factors. The district court did not abuse its discretion by determining that First & First failed to demonstrate irreparable harm under the *Dahlberg* factors. In affirming the district court's denial of First & First's motion for a temporary injunction, we take no position on the merits of First & First's underlying complaint, and we note that the action on the merits remains pending in district court.

**Affirmed.**